JOHN FORTUNE, individually and as Guardian Prochein Ami for DEREK FORTUNE, minor, Plaintiff-Appellee, *v.* KELVIN WONG, MRS. KELVIN WONG, and RONALD K. O. WONG, Defendants-Appellees, and BARBARA Y. M. Y. LAU and CITY AND COUNTY OF HONOLULU, a municipal corporation, Defendants, and FIRST INSURANCE COMPANY OF HAWAII, LTD., Garnishee and Prospective Intervenor-Appellant

NOS. 9838, 9900, 10017

(CIVIL NO. 63185)

JOHN FORTUNE, individually and as Guardian Prochein Ami for DEREK FORTUNE, minor, Plaintiff-Appellant, *v.* KELVIN WONG, MRS. KELVIN WONG, RONALD K. O. WONG, BARBARA Y. M. Y. LAU, and CITY AND COUNTY OF HONOLULU, a municipal corporation, Defendants, and FIRST INSURANCE COMPANY OF HAWAII, LTD., Garnishee and Prospective Intervenor-Appellee

NOS. 9942 & 10020

(CIVIL NO. 63185)

JOHN FORTUNE, individually and as Guardian Prochein Ami for DEREK FORTUNE, minor, Plaintiff-Appellee, *v.* KELVIN WONG, MRS. KELVIN WONG, RONALD K. O. WONG, BARBARA Y. M. Y. LAU, and CITY AND COUNTY OF HONOLULU, a municipal corporation, Defendants, and FIRST INSURANCE COMPANY OF HAWAII, LTD., Garnishee and Prospective Intervenor-Appellant

NO. 9969

(CIVIL NO. 63185)

FIRST INSURANCE COMPANY OF HAWAII, LTD., Plaintiff-Appellant, *v.* KELVIN WONG, PEACE YUEN WONG aka Mrs. Kelvin Wong; and PACIFIC INSURANCE COMPANY, LTD., Defendants-Appellees, and RONALD K. O. WONG; ISLAND INSURANCE COMPANY, LTD. and FIREMAN'S FUND INSURANCE COMPANIES, Defendants, and ISLAND INSURANCE COMPANY, LTD., Third-Party Plaintiff, *v.* JOHN FORTUNE, individually and as Guardian Prochein Ami for DEREK FORTUNE, minor, Third-Party Defendants-Appellees, and BARBARA Y. M. Y. LAU, CITY AND COUNTY OF HONOLULU, a municipal corporation, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10, Third-Party Defendants

NO. 9954

(CIVIL NO. 76735)

JUNE 24, 1985

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

4

OPINION OF THE COURT BY NAKAMURA, J.

Seven appeals have been consolidated for consideration; they stem from a personal injury action and attempts by the plaintiff to recover the awarded damages from an insurance company. The principal parties to the appeals are the plaintiff, whose minor son was injured when struck by a motor vehicle driven by another minor, and the insurance carrier that issued a homeowner's insurance policy to the driver's parents. Though the parties raise a host of questions, the dispositive one is whether the policy insured the driver and his parents against liability for damages sustained by the accident victim and his father as a consequence of the driver's negligence.[1] The Circuit Court of the First Circuit in a declaratory action brought by the insurance carrier ruled there was coverage, despite a clause stating the policy did not apply to "bodily injury or property damage arising out of the ownership, maintenance, operation, use . . . of . . . any motor vehicle owned or operated by . . . any [i]nsured." It concluded this was consonant with the provisions of Hawaii Revised Statutes (HRS) § 577-3 making parents responsible for the torts of their minor children. But in our view the plain wording of the "motor vehicle exclusion" enabled the insurance carrier to deny coverage. We therefore reverse the judgment in the declaratory action, vacate

---

[1]"Negligent entrustment" was not pleaded, and this opinion in no way treats the issue of whether a homeowner's policy affords coverage when negligent entrustment of an automobile is alleged.

the garnishee order entered at the plaintiff's instance, and remand the personal injury action for entry of an order consistent with this opinion.

I.

On August 25, 1978 Derek Fortune, then seven years old, was riding his bicycle on Keeaumoku Street in Honolulu when a motor vehicle driven by Ronald Wong struck and severely injured the young rider. The owner of the vehicle driven by Ronald Wong was Tasty Foods, Inc., a corporate entity controlled by Mr. and Mrs. Kelvin Wong, his parents. John Fortune, Derek's father, subsequently brought suit, individually and as the accident victim's next friend, against the driver and his parents. He amended his complaint thereafter to include the owner of residential property abutting the accident scene and the City and County of Honolulu as defendants.

In the amended complaint John Fortune averred that Ronald Wong negligently operated an automobile in reckless and wanton disregard of Derek's rights, feelings, and safety and that Ronald's parents were liable for the damages flowing from their sixteen-year-old son's negligence, including punitive damages. The pleading further alleged the other defendants caused or contributed to the accident by allowing "a dangerous obstruction to vision and a roadside traffic hazard" to exist.

When the accident occurred, Mr. and Mrs. Wong were insured under an automobile liability policy written by Island Insurance Co., Ltd. and a homeowner's policy written by the First Insurance Co. of Hawaii, Ltd.; Tasty Foods, Inc. was insured under an automobile liability policy issued by Fireman's Fund Insurance Cos.; and Mr. Wong was insured under an excess indemnity policy issued by Pacific Insurance Co., Ltd.[2] Island Insurance, Fireman's Fund, and Pacific Insur-

---

[2]The following chart more graphically presents the insurance coverage then in effect:

| Insurer | Named Insured | Nature of Coverage | Policy Limits |
|---|---|---|---|
| Island Insurance Co., Ltd. | Mr. and Mrs. Wong | Automobile Liability | $300,000 |
| Fireman's Fund Insurance Cos. | Tasty Foods, Inc. | Automobile Liability | $100,000 |
| First Insurance Co. of Hawaii, Ltd. | Mr. and Mrs. Wong | Homeowner's Liability | $400,000 |
| Pacific Insurance Co., Ltd. | Kelvin Wah Nee Wong | Excess Indemnity | $1,000,000 |

ance acknowledged that they were obligated to defend the Wongs and participated in the defense of the action. But First Insurance refused to do so; it was adamant from the outset that its policy afforded no protection against liability stemming from a motor vehicle accident. And on March 28, 1983 it brought an action against the Wongs and the other insurers, seeking a declaration of non-coverage or a determination that its liability was secondary to that of the others.

The declaratory action was still pending when a petition for the approval of a settlement of the claim for damages against the Wongs was filed in the circuit court on October 13, 1983.[3] The settling parties had agreed that judgment in favor of the plaintiff and amounting to $2,500,000 would be entered, the judgment would not be enforceable against the Wongs personally, and the Wongs would assign any rights they had against First Insurance to the plaintiff. The court approved the settlement on October 19, 1983 by entering the findings, conclusions, and judgment proposed by the settling parties.

The plaintiff wasted no time in attempting to enforce the judgment. On the day following the entry of judgment against the Wongs he moved ex-parte for the issuance of garnishee summons directed to First Insurance. First was served with the summons on the same day and filed its answer and disclosure twenty days thereafter as the court commanded. First disclosed that on the day of service it "did not have any goods or effects in its hands or monies of [the Wongs] in its possession" and denied it was indebted to the Wongs.

But between service of the summons and the submission of the answer and disclosure, another division of the circuit court ruled in the declaratory action that the policy written by First Insurance did not exclude the coverage in question and that its liability under the homeowner's policy and the liability of Fireman's Fund under the automobile liability policy issued to Tasty Foods, Inc. were primary and Pacific Insurance's liability under the excess liability policy was secondary. These rulings were entered on November 8, 1983, a day before First submitted its answer and disclosure in the personal injury action.

---

[3] The claim against the property owner was settled for $35,000 and that against the City was settled for $4,000, both settlements occurring on August 5, 1983. It also appears that Fireman's Fund paid plaintiff $100,000, the policy limit, on behalf of Tasty Foods, Inc.

The summons served on First Insurance denoted that the day for the putative garnishee's appearance in court was November 15, 1983. But the circuit court continued the matter until November 21, 1983, when it heard the insurance company's objections but took no action other than to take under advisement the question of whether an order of garnishment was proper under the circumstances.

Yet even before the original return day, the adverse rulings in the declaratory action resulted in an about-face in First Insurance's stance with respect to the personal injury action. Where it stubbornly resisted all efforts by the plaintiff, the Wongs, and the other insurance carriers to secure its participation in a defense of the action or in settlement discussions, it now moved to intervene in the suit. But of course it sought intervention merely to appeal the judgment rendered against the Wongs by stipulation. Simultaneously it submitted a proposed notice of appeal and a motion for an ex-parte order allowing additional time to appeal, which was granted by the circuit court.

The court thereafter heard First Insurance's Motion for Leave to Intervene as Appellant, as well as its Motion for Relief from Judgment, and the plaintiff's Motion to Vacate Order Granting Ex-Parte Motion to Extend Time in Which to File Notice of Appeal. And on December 30, 1983 the court denied the relief sought by the insurance company but granted the plaintiff's motion to vacate the ex-parte order.

A few days earlier the court decided that an order of garnishment should issue, and the parties were so informed on December 27, 1983. But the court's findings and conclusions supporting the decision and the order directing First Insurance to pay the plaintiff's attorneys "the sum of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), and legal interest at the rate of 10% per annum from the date of Judgment" were not entered until March 12, 1984.

Undaunted by the denial of relief from the judgment and leave to intervene for purposes of appealing therefrom, on January 27, 1984 First filed a pleading entitled "Second Notice of Appeal from Orders Denying Leave to Intervene and Denying Relief from Judgment."[4] The plaintiff quickly countered with a motion to strike the notice. The circuit court, however, chose not to expunge the appeal from the record.

---

[4]First apparently considered the proposed notice of appeal it had submitted with its intervention motion the first notice.

The plaintiff then served a garnishee summons on each of the banks where First Insurance maintained accounts, seeking to recover $400,000.00, together with interest in the sum of $22,316.94. Claiming it did not receive notice of the entry of a garnishment order until April 19, 1984, First moved the circuit court for an extension of time to appeal from the order. On May 11, 1984 the court granted the request for additional time, and First filed a "Third Notice of Appeal." and also submitted a supersedeas bond in an approved form and amount.

Counsel for plaintiff persisted in his efforts to collect the $400,000 and interest despite the notice of appeal given by First Insurance and the filing of a supersedeas bond. He served the garnishment order upon First Hawaiian Bank approximately an hour after the bond was filed and received a check for $422,426.23. Pursuant to our order, however, the sum was returned to the bank on August 24, 1984.

The foregoing maneuvers and counter-maneuvers to recover or avoid the payment of damages[5] generated seven appeals, five taken by First Insurance and two by the plaintiff.[6] We turn to the lone appeal

---

[5]Our resume of the facts is by no means an "inning-by-inning" account of the "hardball game" played by the attorneys. The decision we reach on the applicability of the "motor vehicle exclusion" renders unnecessary a detailed description or discussion of most of the moves and counter-moves to enforce or avoid payment of the judgment. But it might be appropriate to observe that some flexibility on the part of opposing counsel would have obviated a great deal of effort without actual sacrifice of ultimate legal positions. Furthermore, a bit of firmness on the part of the circuit court would have served the cause of judicial economy.

[6]The seven appeals are:

1. No. 9938 - an appeal arising from the personal injury action. Appeals were taken by First Insurance from the Judgment, filed October 19, 1983, the Order Granting Motion to Vacate Order Granting Ex Parte Motion to Extend Time in Which to File Notice of Appeal, filed December 10, 1983, the Order Denying Motion for Leave to Intervene as Appellant, filed December 30, 1983, and the Order Denying Motion for Relief from Judgment, filed December 30, 1983.

2. No. 9900 - an appeal arising from the personal injury action. An appeal was taken by First Insurance from the Order of Garnishment entered on March 12, 1984.

3. No. 9942 - an appeal arising from the personal injury action. An appeal was taken by the plaintiff from the Order Denying Plaintiffs' Motion to Strike Second Notice of Appeal from Judgment filed on October 19, 1983 against Defendants Wongs in the Amount of $2.5 Million, and the Designation for Inclusion in the Record [of] the Transcripts of the Proceedings before the Honorable Toshimi Sodetani on October 18, 1983.

4. No. 9969 - an appeal arising from the personal injury action. An appeal was taken by First Insurance from the Order Granting Ex Parte Motion for Issuance of Garnishee Summons after Judgment and from the Garnishee Order.

calling for a decision on the merits, the appeal from the decision and judgment holding that the homeowner's policy covered the negligent operation of a motor vehicle by Ronald Wong.

## II.

The circuit court ruled that "coverage must be afforded to Defendants KELVIN WONG and PEACE YUEN WONG under the FIRST INSURANCE homeowner's policy for their vicarious parental liability, pursuant to H.R.S. § 577-3,[7] for the torts of their minor child, RONALD K. O. WONG." That HRS § 577-3 makes "[t]he father and mother of unmarried minor children . . . jointly and severally . . . liable in damages for tortious acts committed by their children" is not to be denied. But in our view the question here is basically one of interpretation of an insurance contract. Our analysis thus "begins as it must with the relevant provisions of the insurance policy." *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. 203, 207, 684 P.2d 960, 962 (1984).

---

5. No. 10017 - an appeal arising from the personal injury action. An appeal was taken by First Insurance from the Order Denying Motion to Set Aside [Garnishment] Order.

6. No. 10020 - an appeal arising from the personal injury action. An appeal was taken by the plaintiff from the Order Granting Ex Parte Motion to Extend Time in Which to File Notice of Appeal from Garnishment Order.

7. No. 9954 - an appeal arising from the declaratory action. An appeal was taken by First Insurance from the declaratory judgment holding there was coverage under the homeowner's policy.

[7]HRS § 577-3 reads as follows:

Natural guardian; liability for torts of child. The father and mother of an unmarried minor child are jointly the natural guardians of his person and property. They shall have equal powers and duties with respect to him and neither shall have any right superior to that of the other concerning his custody or control or any other matter affecting him; provided, that if either parent dies or abandons the family or is incapable for any reason to act as guardian, the guardianship devolves upon the other parent, and that when the parents live apart, the court may award the guardianship to either of them, having special regard to the interests of the child. The father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children, and shall be jointly and severally entitled to prosecute and defend all actions in which the children or their individual property may be concerned.

## A.

The policy issued to Kelvin Wong and Peace Yuen Wong provided that First Insurance would "pay on behalf of the Insured all sums which the Insured [became] legally obligated to pay as damages because of bodily injury or property damage to which [the policy] applie[d]." First does not dispute that Mr. and Mrs. Wong became legally obligated to pay damages because of bodily injury sustained by Derek Fortune. But it argues the homeowner's policy did not apply:

> a. To bodily injury or property damage arising out of the owner-ship, maintenance, operation, use, loading or unloading of:
>
> .  .  .  .
>
> (2) any motor vehicle owned or operated by or rented or loaned to any Insured . . . .

This exclusion, the insurer maintains, "clearly and unambiguously voids coverage for bodily injury arising out of the operation of a motor vehicle by any insured." Since the bodily injury for which damages were assessed "arose out of the operation of a motor vehicle by Ronald Wong, an insured," it argues the exclusion undoubtedly served to deny coverage. The plaintiff counters with an argument that "a coverage provision in the policy must be construed broadly in favor of the insured and [an] exclusion provision must be construed narrowly and against the insurer."

What the plaintiff avers is not to be faulted as a general proposition. "[W]e have long subscribed to the principle that [insurance policies are contracts of adhesion and they are to be] 'construed liberally in favor of the insured and the ambiguities resolved against the insurer. *See Alexander v. Home Ins. Co.,* 27 Haw. 326, 328.' *Masaki v. Columbia Casualty Co.,* 48 Haw. 136, 141, 395 P.2d 927, 929 (1964); *see also State Farm Mutual Automobile Insurance Co. v. Bailey,* 58 Haw. 284, 289, 568 P.2d 1185, 1188 (1977)." *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. at 209, 684 P.2d at 964.

Still, the rule is not applied without exception upon mere assertions of ambiguity. *Id.* "Rather, ambiguity is found [and the rule is followed] 'only when the contract taken as a whole is reasonably subject to differing interpretation.' *Modern Construction, Inc. v. Barce, Inc.,* 556 P.2d 528, 529 (Alaska 1976)." *U.S. Fire Insurance Co. v. Colver,* 600 P.2d 1, 3 (Alaska 1979). "And what we are committed to enforce are '[t]he objectively reasonable expectations of applicants and intended

beneficiaries regarding the terms of insurance contracts.' Keeton, *Insurance Law Rights at Variance With Policy Provisions,* 83 Harv. L. Rev. 961, 967 (1970)." *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. at 210, 684 P.2d at 964. In our view the policy is not subject to an interpretation that it provided insurance coverage in the situation before us.

The homeowner's policy declared in unambiguous language that it did not apply to bodily injury arising from the operation of a motor vehicle by an insured. The complaint in the personal injury action charged that Ronald Wong drove a motor vehicle in negligent fashion, his negligence resulted in bodily injury, and his parents were liable for the damages. Inasmuch as a court "cannot rewrite the contract of the parties," 12 G. Couch, *Cyclopedia of Insurance Law* (2d. ed.) § 44A:2 (1981) (footnote omitted), we cannot say liability for Ronald Wong's negligence was within the intendment of the parties.

Nor are there grounds for inferring the insured could have reasonably expected their homeowner's policy to insure the risk of Ronald's negligence in driving. "Generally speaking, the personal liability provisions of a homeowner's policy bind the insurer to pay damages for which the insured shall become liable as a result of accidents in and around his home." *Herzog v. National American Insurance Co.,* 2 Cal. 3d 192, 197, 84 Cal. Rptr. 705, 707, 465 P.2d 841, 843 (1970) (footnote omitted). The use of an automobile "presents hazards not closely associated with the home, for which other insurance is customarily carried and is generally understood to afford coverage." *Id.* (footnote omitted). The observation of the California Supreme Court is borne out here, for the Wongs purchased two policies specifically written to insure the risks associated with the operation of automobiles. This of course belies an expectation on their part that the homeowner's policy would cover Ronald's negligent driving, and we would have to say the motor vehicle exclusion served to negate the insurer's liability for damages arising from the accident. *Id.; Safeco Insurance Co. v. Gilstrap,* 141 Cal. App. 3d 524, 533, 190 Cal. Rptr. 425, 431-32 (1983); *accord Farm Bureau Mutual Insurance Co. v. Sandbulte,* 302 N.W.2d 104, 113 (Iowa 1981).

B.

The circuit court, however, ruled "coverage [should] be afforded [the Wongs] for their . . . liability, pursuant to HRS § 577-3." That Mr. and Mrs. Wong are "jointly and severally . . . liable in damages [thereunder]

for tortious acts committed by their [unmarried minor] children" is indisputable. "The principle of respondeat superior, originating in cases of master and servant, has been extended to impose vicarious liability in other situations." Prosser and Keeton, *The Law of Torts* § 82 (5th ed. 1984) (footnote omitted). And in Hawaii, it has been determined as a matter of public policy that parents ought to be vicariously responsible for the torts of their unmarried minor children. The statute "represent[s] an obvious effort to find a financially responsible defendant who can be charged with the liability of another who ... cannot be relied on to pay a judgment." *Id.*

But "[t]he basis of [vicarious] liability is still the negligence or other fault of the one actually at fault." *Id.* "What has been done ... is not to institute a system of liability without fault, but to broaden the fault liability to include those who may properly be held responsible for the fault that occurred." *Id.* We see nothing in the statute imposing liability on any other basis. Since the homeowner's policy was written to exclude coverage of bodily injury resulting from negligence in the operation of a motor vehicle, the insurer is not liable for damages here, though the driver's parents undoubtedly are. *See La Bonte v. Federal Mutual Insurance Co.,* 159 Conn. 252, 268 A.2d 663 (1970).

## III.

The decision that First Insurance was not obligated to indemnify the Wongs moots the other issues posed in the seven appeals. However, a subsidiary matter spawned by our reversal of the declaratory judgment remains.

The plaintiff instituted garnishment proceedings on an assumption that the homeowner's policy covered the liability of the Wongs. The circuit court's order of garnishment was entered after a declaration of coverage by another division of the court. "The existence of a valid judgment is a jurisdictional prerequisite to garnishment relief," *Zurich Insurance Co. v. Bonebrake,* 137 Colo. 37, 39, 320 P.2d 975, 976 (1958) (citation omitted), and there was a judgment when the order was entered. But "once a [presumptively] valid judgment is extinguished as a result of reversal, vacation, or dismissal, garnishment proceedings pertaining to that judgment are precluded." *Pennington v. Employer's Liability Assurance Corp.,* 520 P.2d 96, 97 (Alaska 1974) (footnote omitted). And it follows that John Fortune "can not garnishee where the

[Wongs] could not recover from [First] on the [homeowner's] policy." 22 A. Appleman, *Insurance Law and Practice* § 14565 (J. Appleman ed. 1979) (footnote omitted); *see also United States v. United Bonding Insurance Co.*, 422 F.2d 277, 280 (5th Cir. 1970).

Thus it becomes incumbent upon us to vacate the order of garnishment. Moreover, we think First is entitled to further relief; it should recover any interest lost as a consequence of the sequestration of its funds subsequent to the posting of a supersedeas bond in an approved form and amount.

The judgment in Civil No. 76735 is reversed, and the order of garnishment in Civil No. 63185 is vacated. Civil No. 63185 is remanded for entry of an order granting relief consistent with this opinion.

*Jeffrey S. Portnoy (Susan Oki Mollway* with him on the briefs; *Cades, Schutte, Fleming & Wright,* of counsel) for Garnishee & Prospective Intervenor-Appellant First Insurance Co. in Appeal Nos. 9838, 9900, 9942, 9969, 10017 & 10020.

*Henry N. Kitamura (Raymond J. Tam, Roy K. S. Chang* and *Valerie W. H. Fong* with him on the briefs; *Shim, Tam, Kirimitsu & Naito,* of counsel) for Appellee Fortune in Appeal Nos. 9838, 9900, 9942, 9969, 10017 & 10020.

*Spencer L. Kimball; George W. Brandt, Thomas E. Cook* and *Beverly Lynne K. Hiramatsu* with him on the briefs (*Lyons, Hagerman & Brandt,* of counsel) for Plaintiff-Appellant First Insurance Co. in Appeal No. 9954.

*Henry N. Kitamura (Raymond J. Tam, Roy K. S. Chang* and *Valerie W. H. Fong* with him on brief; *Shim, Tam, Kirimitsu & Naito,* of counsel) for Appellees Wong, Pacific Insurance Co. and Fortune in Appeal No. 9954.

On the briefs in Appeal No. 9954:

*Jan M. Weinberg, Roy J. Bell, III* and *Winfred K. T. Pong (Weinberg & Bell,* of counsel) for Amicus Curiae Attorneys for Hawaii Academy of Plaintiff's Attorneys.

*Grant K. Kidani* and *Scott G. Leong (Kidani, Oshima & Wong,* of counsel) for Amicus Curiae Cigna/Insurance Co. of North America.