979 P.2d 74

**Antoinette CRAWLEY and Summer Baker, Plaintiffs–Appellants,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee,**

**and**

**Toni Sales and Michelle Delacruz, Defendants.**

**No. 21655.**

Intermediate Court of Appeals of Hawai'i.

April 13, 1999.

Certiorari Denied May 21, 1999.

---

Melvin Y. Agena and Heidi M. Ho, on the briefs, Honolulu, for plaintiff-appellant Antoinette Crawley.

Birney B. Bervar, on the briefs, Honolulu, for plaintiff-appellant Summer Baker.

Margaret Jenkins Leong and Kathleen A. Kelly (Goodsill Anderson Quinn & Stifel), on the briefs, Honolulu, for defendant-appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that where an automobile liability insurance policy provides coverage for non-owned cars, but limits that coverage to the named insured, his or her spouse, and/or their relatives, and "relative" is defined by the policy as a person related to and who lives with the named insured, the insurer is not required to defend or indemnify an insured parent for the tortious conduct of a minor child who does not live with such parent. We further hold that Hawai'i Revised Statutes (HRS) § 577-3 (1993), which imposes joint and several liability on parents for the tortious conduct of their minor children, does not as a matter of public policy impose a duty on an automobile insurer to defend or indemnify an insured parent for the tortious conduct of his or her minor child. The insurer is under no such obligation unless language in the policy itself would mandate coverage.

Because (1) the May 20, 1998 final judgment rendered by the first circuit court (the court) in favor of Defendant-Appellee State Farm Mutual Automobile Insurance Company (State Farm) and Defendants Michelle Delacruz (Michelle) and Toni Sales (Sales),[1] and (2) the June 10, 1998 judgment of the court denying the counter-motion for summary judgment filed by Plaintiffs-Appellants Antoinette Crawley and Summer Baker (collectively, Appellants) were consistent with the foregoing propositions, we affirm the said judgments.

I.

Appellants and State Farm agree that there are no material facts in dispute. On December 21, 1994, at approximately 4:40 a.m., Michelle was driving a GMC "Jimmy" automobile (the Jimmy). Appellants were her passengers. Michelle failed to stop at a stop sign at the intersection of Lumiaina and Lumiauau Streets in the City and County of Honolulu. The Jimmy collided with a pick-up truck and as a result, Appellants were injured.[2]

Michelle was seventeen years old and thus a minor at the time. She is the daughter of Sales and her former husband, Wendell Delacruz (Delacruz). Sales and Delacruz were divorced in 1985.

According to Michelle's declaration,[3] she had been residing with her father for several

1. On July 30, 1996, Defendants Michelle Delacruz (Michelle) and Toni Sales (Sales) filed a motion for summary judgment against Plaintiffs-Appellants Antoinette Crawley and Summer Baker (collectively, Appellants). On October 9, 1996, the first circuit court (the court) granted the motion. On May 20, 1998 final judgment was entered in favor of Michelle and Sales on their motion. *See infra*, n.10.

Appellants do not appeal from the order granting Michelle and Sales's summary judgment motion or from the final judgment entered thereon with respect to them. The notice of appeal, filed by Appellants on June 18, 1998, is from the judgment denying Appellants' counter-motion for summary judgment and the final judgment as it "pertain[ed] to the [o]rder [g]ranting ... [the] [c]orrected [m]otion for [s]ummary [j]udgment" filed by "Defendant[-Appellee] State Farm Mutual Automobile Insurance Company[] [(State Farm)]." Thus, Michelle and Sales are not parties to this appeal.

2. The extent of Appellants' injuries is not indicated in the record.

3. Michelle's declaration was attached as an exhibit to State Farm's corrected motion for summary judgment.

years and "considered [Delacruz's residence] to be [her] permanent residence."[4] Michelle reported she had "daily use of the Jimmy to get to and from school, and had use of the Jimmy every day for at least [twenty-one] consecutive days prior to the accident."

Delacruz owned the Jimmy and was insured under a liability policy issued by Allstate Insurance Company (Allstate). In August and September 1995, Appellants settled part of their claims for personal injuries with Michelle, Sales, Delacruz, and Delacruz's insurer, Allstate. Appellants each entered into a "Joint Tortfeasor Release and Indemnity Agreement" (the releases) in which Appellants released Michelle, Sales, and Delacruz from liability related to the accident "except to the extent of any applicable insurance monies available" under an automobile liability policy issued to Sales by State Farm. In consideration of the releases, Allstate agreed to pay each Appellant the "bodily injury policy limit, *i.e.*, $35,000.00," under the Allstate policy.

At the time of the accident, Sales owned a Mazda MX3 automobile (the Mazda) and was insured under the State Farm policy. Sales was the "NAMED INSURED" and the Mazda was the "DESCRIBED VEHICLE" listed on the declarations page of the policy. Sales did not "own, use, possess or insure" the Jimmy, did not know Michelle was driving the Jimmy, and had not given Michelle permission to drive the Jimmy. When the accident occurred, Michelle was "not performing any tasks, errands, or favors" for Sales.

II.

A.

Appellants made a demand on State Farm for coverage of their personal injury claims[5] under Sales's policy. The demand was rejected by State Farm.[6]

On May 22, 1996, Appellants filed a complaint for declaratory and injunctive relief[7] against Michelle, Sales, and State Farm. The complaint sought a declaration that Sales, pursuant to HRS § 577-3,[8] was liable for the

4. According to Sales's declaration, also attached as an exhibit to State Farm's summary judgment motion, Michelle visited Sales two or three times per month and had not "stayed overnight at [Sales's] home for more than five years preceding" the accident.

5. The State Farm policy contained a clause which would appear to limit State Farm's liability (assuming it was liable in this case) to "excess" coverage:

> **If There is Other Liability Coverage**
>
> ....
>
> 3. ... Non-Owned Car....
>
> If a ... ***non-owned car*** ... has other vehicle liability coverage on it, then this coverage is excess....

(Emphases in original.)

6. The record does not contain any documents detailing Appellants' demands upon State Farm prior to the filing of their complaint in this action. However, Appellants' complaint alleged the following, which were admitted by State Farm in its answer to the complaint:

> 14. [Appellants], through their respective counsel, have asked State Farm to acknowledge that insurance exists under the State Farm policy with respect to the injuries that ... [Appellants] suffered in the accident.
>
> 15. State Farm has rejected ... [Appellants'] contentions, stating[,] ... "We are denying any liability on the part of ... Sales as she was not involved in the accident."

7. Appellants requested injunctive relief "[e]njoin[ing] State Farm ... from further attempting to deny coverage to [Michelle and/or] Sales ... for their legal liabilities to ... [Appellants] for the injuries that ... [Appellants] sustained as a result of the accident[.]"

8. Hawai'i Revised Statutes (HRS) § 577-3 (1993) provides:

> **Natural guardian; liability for torts of child.** The father and mother of an unmarried minor child are jointly the natural guardians of the child's person and property. They shall have equal powers and duties with respect to the child and neither shall have any right superior to that of the other concerning the child's custody or control or any other matter affecting the child; provided that if either parent dies or abandons the family or is incapable for any reason to act as guardian, the guardianship devolves upon the other parent, and that when the parents live apart, the court may award the guardianship to either of them, having special regard to the interests of the child. *The father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children,* and shall be jointly and severally entitled to prosecute and defend all actions in which the children or their individual property may be concerned.

(Emphasis added.)

tortious acts of her minor child, Michelle, that Michelle and Sales were "insured" persons under the State Farm policy, and thus, "insurance exist[ed] under the State Farm policy with respect to the injuries ... [Appellants] suffered in the accident."

B.

On December 5, 1997, State Farm filed its corrected [9] motion for summary judgment on the basis (1) "that neither [Michelle] nor the [Jimmy] ... were covered under the State Farm policy[,]" and (2) that Sales's potential vicarious liability under HRS § 577-3 was also not covered. A copy of the policy, copies of the releases, and the declarations of Michelle and Sales were attached to State Farm's motion.

On January 2, 1998, Appellants filed their opposition memorandum in which they argued that State Farm was "required to pay damages [arising from the accident] because ... Sales [wa]s legally liable through [HRS § ] 577-3 for the negligent acts of [Michelle,] her then minor daughter[,]" and that coverage extended to the Jimmy under the "non-owned car" provision of the State Farm policy. Alternatively, Appellants contended that the definition of an "insured" under the "non-owned car" coverage provisions was ambiguous, and, thus, "the question of coverage [should] be liberally construed in favor of coverage." Finally, Appellants maintained that since the policy did not specifically exclude coverage for parental liability under HRS § 577-3, it covered Sales's vicarious liability thereunder.

On January 5, 1998, Appellants filed their counter-motion for summary judgment, raising the same arguments contained in their opposition memorandum. Included among the exhibits to Appellants' counter-motion for summary judgment were a copy of the State Farm policy and a "Stipulation Amending Child Custody and Child Support" dated October 27, 1986. According to the child custody stipulation, Sales and Delacruz were to "maintain joint legal custody" of Michelle and her brother, but Sales was awarded "sole physical custody" of the children.

On January 6, 1998, State Farm filed its reply memorandum to Appellants' opposition memorandum. State Farm argued that (1) Michelle was not an insured, (2) the Jimmy was not an insured vehicle, and (3) the facts of this case did not fit within the "non-owned car" endorsement. Further, State Farm asserted that its policy was not ambiguous and that the public policy underlying HRS § 577-3 did not mandate insurance coverage in this case.

C.

On February 27, 1998, the court entered an order denying Appellants' counter-summary judgment motion.

On March 9, 1998, the court entered an order granting State Farm's summary judgment motion. The court found that there were no genuine issues of material fact. It concluded that State Farm was entitled to judgment as a matter of law, because the State Farm policy did "not provide coverage for [Michelle or Sales]" for the following reasons:

> a) First, the ... Jimmy operated by Michelle ... at the time of the ... accident [wa]s not a covered vehicle described in the State Farm policy. [The] ... Mazda ... [wa]s the vehicle included ... under ... the State Farm [p]olicy.
>
> b) Second, the "use of other cars" coverage provided in the State Farm policy d[id] not apply because the ... Jimmy was not being operated by an "insured" at the time of the ... accident. It is undisputed that Michelle ... was the driver of the ... Jimmy. However, [Michelle] was not an "insured" under the State Farm policy....

The court subsequently entered the May 20, 1998 [10] and June 10, 1998 judgments referred to earlier.

9. State Farm had filed a motion for summary judgment on November 12, 1997, which was subsequently withdrawn on November 28, 1997. State Farm's corrected motion for summary judgment included, as attachments, several amendments to coverage not included in State Farm's original summary judgment motion.

10. Michelle and Sales had filed a motion for summary judgment in which they argued that,

III.

" 'On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts.' " *Pacific Int'l Servs. Corp. v. Hurip,* 76 Hawai'i 209, 213, 873 P.2d 88, 92 (1994) (quoting *Reyes v. Kuboyama,* 76 Hawai'i 137, 138, 870 P.2d 1281, 1282 (1994)). Summary judgment is appropriately granted " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (quoting *Gossinger v. Association of Apt. Owners of the Regency of Ala Wai,* 73 Haw. 412, 417, 835 P.2d 627, 630 (1992)); Hawai'i Rules of Civil Procedure Rule 56(c).

As previously noted, the parties agree on the material facts. The sole issue on appeal, therefore, is whether the court correctly determined, as a matter of law, that the State Farm policy did not provide Sales with liability coverage. " 'As a general rule, the construction and legal effect to be given a[n insurance] contract is a question of law freely reviewable by an appellate court.' ... The determination [of] whether a contract is ambiguous is likewise a question of law that is freely reviewable on appeal." *Brown v. KFC Nat'l Management Co.,* 82 Hawai'i 226, 239, 921 P.2d 146, 159, *reconsideration denied,* 82 Hawai'i 360, 922 P.2d 973 (1996) (quoting *Cho Mark Oriental Food, Ltd. v. K & K Int'l,* 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992)) (some citations omitted). This court reviews conclusions of law under the right/wrong standard. *Wharton v. Hawaiian Elec. Co.,* 80 Hawai'i 120, 122, 906 P.2d 127, 129 (1995).

IV.

The terms of the State Farm policy itself are not in dispute. As indicated previously, the declarations page listed Sales as the sole named insured and the Mazda as the described vehicle. The policy period, October 14, 1994 to April 14, 1995, included the accident date.

Under "SECTION I—LIABILITY—COVERAGE A" of the State Farm policy, Sales had the following liability coverage for accidents arising from the ownership, maintenance or use of the Mazda:

[State Farm] will:

1. pay damages, including punitive or exemplary damages, which an ***insured*** becomes legally liable to pay because of:
   a. ***bodily injury*** to others, and
   b. damage to or destruction of property including loss of its use,

caused by accident resulting from the ownership, maintenance or use of ***your car***[.]

(Boldfaced and italicized emphases in original; underscored emphases added.) The term "your car" is explicitly limited to "the ***car*** or the vehicle described on the declarations page." (Boldfaced and italicized emphasis in original.) In this case, the Mazda was the only car described on the declarations page, and, as Appellants concede, the Jimmy was not covered by the term "your car."

Additionally, however, the State Farm policy provided that "[t]he liability coverage extends to the use, by an ***insured,*** of a ***newly acquired car***, a ***temporary substitute car***, or a ***non-owned car***." (Boldfaced and italicized emphases in original; underscored emphases added.) A "non-owned car" was defined under "DEFINED WORDS" in the "6082G AMENDATORY ENDORSEMENT" as follows:

under the releases, they did not have "any further personal liability to ... [Appellants]" and that Appellants' complaint "did not allege that a 'case of controversy' exist[ed] between [Appellants] and either ... S[ales] or ... [Michelle]. Consequently, [they maintained,] neither ... S[ales n]or ... [Michelle] possess[ed] a 'concrete interest' in the adjudication of the coverage dispute between [Appellants] and State Farm."

A hearing on Michelle and Sales's summary judgment motion was held on September 10, 1996. As noted earlier, *see supra,* n.1, the court granted the motion and its ruling was reflected in the May 20, 1998 final judgment.

*Non-Owned Car*—means a ***car*** not owned, registered or leased by:

1. ***you, your spouse;***
2. any ***relative*** unless at the time of the accident or ***loss***:
   a. the ***car*** currently is or has within 30 days been insured for liability coverage; and
   b. the driver is an ***insured*** who does not own or lease the ***car***;
3. any other ***person*** residing in the same household as ***you, your spouse***, or any ***relative***.

***Non-owned car*** does not include a:

1. rented ***car*** while it is used in connection with the ***insured's*** employment or business; or
2. ***car*** which has been operated or rented by or in the possession of an ***insured*** during any part of each of the last 21 or more consecutive days....

A ***non-owned car*** must be a ***car*** in the lawful possession of the ***person*** operating it.

(Boldfaced and italicized emphases in original; underscored emphases added.)

The term "insured" with respect to a non-owned car as set forth in "SECTION I—LIABILITY—COVERAGE A" meant:

1. the first ***person*** named in the declarations;
2. his or her ***spouse;***
3. their ***relatives***; and
4. any ***person*** or organization which does not own or hire the ***car*** but is liable for its use by one of the above ***persons***.

(Boldfaced and italicized emphases in original; underscored emphasis added.) The term "relative" was defined as "a ***person*** related to ***you*** or ***your spouse*** by blood, marriage or adoption who lives with ***you***. It includes ***your*** unmarried and unemancipated child away at school." (Boldfaced and italicized emphases in original; underscored emphasis added.)

V.

Appellants bore the burden of proving that the State Farm policy provided coverage in this case. "One suing on a liability policy must establish that the loss fell within its terms." 21 J. Appleman & J. Appleman, *Insurance Law and Practice* § 12094, at 24 (1980) (footnote omitted); *see also Sentinel Ins. Co. v. First Ins. Co. of Hawai'i*, 76 Hawai'i 277, 292 n. 13, 875 P.2d 894, 911 n. 13 (1994) (observing that insured generally has burden to prove that loss is covered under terms of the insurance policy); *Stanke v. State Farm Mut. Auto. Ins. Co.*, 200 Mich. App. 307, 503 N.W.2d 758, 762 (1993) (examining an automobile insurance policy similar to the one at issue here and holding that "it will be necessary for [the claimant] to show, inter alia, that [the insured's son wa]s an 'insured,'" and that the car was "a nonowned automobile" covered by insured's policy). We must conclude that Appellants failed to sustain their burden.

VI.

A.

Appellants first argue that coverage was afforded Sales under the non-owned car endorsement. Non-owned car endorsements are provided to "allow[ ] the insured liability coverage while using vehicles he or she does not own." 8 L. Russ & T. Segalla, *Couch on Insurance 3d* § 118:3, at 118–9 (1997) [hereinafter *Couch on Insurance 3d* ]. Generally, the purpose of such coverage is

> to provide protection for an insured for the occasional or infrequent driving of an automobile other than the described automobile, but not to take the place of insurance on automobiles which are furnished for the insured's regular or frequent use; similarly, the general purpose of a drive-other-automobiles clause is to extend coverage to the insured when engaged in the infrequent and casual use of an undescribed automobile[.]

*Id.* at 118–10 (footnotes omitted).

Appellants maintain that the Jimmy qualified as a "non-owned car" and Sales was an "insured" under the definition of that term as "any person or organization which does not

own or hire the car but is liable for its use by one of the above persons." They urge that this fourth definition of "insured" applies because, under HRS § 577-3, Sales was liable for the tortious conduct of Michelle.

"[T]he terms of the [insurance] policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended, ... and '[t]he court must ... respect the plain terms of the policy and not create ambiguity where none exists.'" *First Ins. Co. of Hawaii, Inc. v. State,* 66 Haw. 413, 424, 665 P.2d 648, 655 (1983) (quoting *Crawford v. Ranger Ins.,* 653 F.2d 1248, 1250 (9th Cir.1981)) (citation omitted). Assuming *arguendo* that "insured" may be construed as Appellants contend, Michelle must presumably be included as "one of the above persons" described in the preceding three definitions of an insured. Obviously, Michelle was not "the first person named in the declarations [(who was Sales),]" or "his or her spouse[,]" and could only fall within the category of one of Sales's "relatives[.]" But, under the agreed upon facts, Michelle did not qualify as a relative of Sales as the term "relative" is defined in the policy.

Here, the State Farm policy defined "relative" as a person related by blood, marriage or adoption "who lives with you [(Sales)]." While the child custody stipulation vested sole physical custody in Sales, we do not believe it controls over the facts of the case. It is not disputed that Michelle lived with Delacruz since her parents' divorce, only visited Sales on weekends, and did not regularly sleep at Sales's house. Plainly, at the time of the accident Michelle was not living with Sales, and thus, Michelle was not a relative of Sales within the meaning of that term as used in the non-owned car endorsement. *See Couch on Insurance 3d* § 118:40, at 118-60 (In order for a family member to be covered under non-owned car insurance coverage, the family member "must qualify as an 'insured' under the policy[.]") *Cf. Park v. Government Employe[e]s Ins. Co.,* 89 Hawai'i 394, 398, 974 P.2d 34, 38 (1999) (declining to adopt a "complex, multi-factor analysis for determining whether two persons, related to each other, who physically reside in the same residence, are members of the same 'household[,]'" and, instead, focusing on the "reasonable expectations of a layperson," holding that "family members, living in the same residence, are considered members of the same household for purposes of insurance coverage").

B.

We do not believe that Appellants' cited cases require a contrary result.

1.

In *Scott v. American Standard Ins. Co. of Wisconsin,* 132 Wis.2d 304, 392 N.W.2d 461, 462 (Wis.Ct.App.1986), Timothy Scott (Scott), a minor, was injured while a passenger in a car owned and operated by Robert Waters (Robert), another minor. Robert's father had legal custody of Robert. *Id.* Robert's mother, Benita, was divorced from Robert's father and lived with her new husband, Marlin Mueller (Mueller). *Id.* Mueller had an automobile liability policy with John Deere Insurance Company (John Deere). *Id.* at 462-63.

Benita had "sponsor[ed]" Robert's driver's license. *Id.* Under state law, Robert's negligence in operating the car was imputed to Benita as his sponsor. *Id.* at 462. Robert did not live with Benita; it is not clear from the opinion whether Robert lived with his father or in some other arrangement. *Id.* at 464.

Timothy's parents sued, *inter alia,* John Deere, arguing that Mueller's policy provided coverage for Benita's imputed liability. *Id.* at 463. The policy provided that John Deere would "pay damages ... for which *any covered person* becomes legally responsible because of an auto accident." *Id.* (emphasis added). A "covered person" was defined as:

1. You <u>or any *family member* for the</u> ownership, maintenance or <u>use of any auto</u> or *trailer.* [(paragraph (1))]

....

4. For any auto *or trailer,* other than *your covered auto,* any person or organization but only with respect to legal respon-

sibility for acts or omissions of you or any *family member* for whom coverage is afforded under this Part....

*Id.* (italicized emphases in original; underscored emphases added). "Family member," in turn, was defined as a person related by blood, marriage or adoption who resides in the insured's household. *Id.* at n. 2.

The appellate court found that Robert "was not a 'family member' ... because he did not live with the Muellers." *Id.* at 463–64. However, it noted that Benita was "a 'family member' under the policy because she is [Mueller's] wife and resides in his household." *Id.* at 463. Employing the words "use of any auto," the court determined that "Benita ... is a covered person for the 'use of any auto' irrespective of who may be operating it[,]" *id.* at n. 4, and that coverage under the policy "includes payment of any damages 'for which [she] becomes legally responsible because of an auto accident.'" *Id.* at 463. In doing so, the appellate court apparently relied on the broad language of the policy:

> [Benita] is "legally responsible" for such of ... Scott's injuries as were caused by [Robert's] negligence. *The policy does not condition coverage on the use of a particular car or the involvement of a particular driver. Its plain language covers damages for which Benita becomes legally responsible because of an accident involving the use of any automobile.*

*Id.* (emphasis added) (footnote omitted).

In contrast, the State Farm policy in the instant case does not extend coverage widely to "the use of *any* auto" by a family member. *Id.* at 463 (emphasis added). Even if it did, Michelle did not reside in Sales's home so as to be considered a family member, i.e., relative who resided in her home.

2.

Nor do we find *Brown v. Champeau,* 537 So.2d 1120 (Fla.Dist.Ct.App.1989) apposite. Philip Champeau (Champeau) was the owner and operator of a car involved in an accident in which Michael Brown (Brown) was injured. *Id.* at 1121. Champeau's mother, Charlotte Boudreau (Charlotte) had "signed an application for her minor son's driver's license, thereby agreeing to be jointly liable for any damages caused by [Champeau's] negligence[.]" *Id.* Champeau did not live with Charlotte or her husband, James. *Id.* James was insured by General Accident Fire and Life Insurance Corporation, Ltd. (General Accident). *Id.* Brown sued Champeau and Charlotte. *Id.* Charlotte sued for declaratory relief against General Accident and it denied coverage. *Id.*

The relevant language of the General Accident policy, which is quite similar to the language discussed in *Scott,* provided as follows:

> We will pay damages for bodily injury or property damage for which *any covered person* becomes legally responsible because of an auto accident....
>
> ["]Covered person["] as used in this Part means:
>
> 1. You or *any family member* for the ownership, maintenance or use of *any auto* or trailer.
>
> ....
>
> 4. For *any* auto or trailer, other than your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or trailer.

*Id.* at 1121–22 (emphases added).

Subsections 1 and 4 above are identical to subsections 1 and 4 in *Scott.* As in *Scott,* the appellate court explained that the broad coverage provided by the words "use of any auto," and the fact Charlotte resided with the insured, resulted in coverage:

> Charlotte ... <u>was a "family member"</u> under the policy <u>because she was James's wife and resided in his household</u>. She was, therefore, a "covered person" with respect to "the ... use of any automobile" (which, of course, included Champeau's) for which she became legally responsible because of the 1982 accident which injured Brown. <u>The policy does not condition coverage on the use of a particular car or the involvement of a particular driver. Para-</u>

graph 1 does not limit coverage to a family member for *that person's* use of any auto, but refers merely to the use of any auto. *See Scott*....

*Id.* (italicized emphases in original; underscored emphases added.) In light of our previous discussion of *Scott, Brown* is similarly distinguishable.

C.

State Farm relies on *State Farm Mut. Auto. Ins. Co. v. Swetokos,* 566 So.2d 901 (Fla.Dist.Ct.App.1990), in which a different division of the appellate court which decided *Brown* analyzed an insurance policy like the one before us.

In that case, John Swetokos (Swetokos) had an automobile liability policy with State Farm. *Id.* at 902. Swetokos had signed an application enabling his son, John Jr. (Junior), a minor, to obtain a driver's license. *Id.* As a result, under state law, Swetokos became "vicarious[ly] liab[le]" for torts arising from Junior's operation of a vehicle. *Id.* Junior did not reside with his father. *Id.*

Junior was involved in an automobile accident while driving a car owned and insured by his grandfather. *Id.* Todd McConnell (Todd) was injured in the accident. *Id.* Todd settled with Junior's grandfather's insurance carrier and then filed suit against Swetokos, claiming vicarious liability. *Id.* State Farm filed a declaratory action, asserting that its policy did not cover Junior. *Id.* Except for the definition of a non-owned car, the pertinent policy provisions are the same as those involved in our case:

> Coverage for the Use of Other Cars.
>
> The liability coverage extends to the use, by an *insured,* of a *newly acquired car,* a *temporary substitute car* or a *non-owned car.*
>
> Who is an insured
>
> ....
>
> When we refer to a *non-owned car, insured* means:
>
> 1. the first *person* named in the declarations;
> 2. his or her *spouse;*
> 3. their *relatives;* and
> 4. any *person* or organization which does not own or hire the car but is liable for its use by one of the above *persons.*
>
> ....
>
> *Relative*—means a *person* related to *you or your spouse* by blood, marriage or adoption (including a ward or foster child) who lives with *you.* It includes *your* unmarried and unemancipated child away at school.
>
> ....
>
> *Non-Owned Car*—means a *car* not:
>
> 1. owned by,
> 2. registered in the name of, or
> 3. furnished or available for the regular or frequent use of:
>
> *you, your spouse,* or any *relatives.* The use has to be within the scope of consent of the owner or *person* in lawful possession of it.

*Id.* at 901 (emphases in original). The trial court found that coverage under Swetokos's State Farm policy extended to Junior's accident under the non-owned car endorsement. *Id.* The appellate court reversed. *Id.*

Determining that the car driven by Junior was a non-owned car, the appellate court pointed out that "[t]he policy conditions coverage of 'non-owned cars' to their 'use, by an insured.'" *Id.* The court concluded that Junior was "not an 'insured' under the provision given that he did not live with [Swetokos] at the time of the accident, so as to preclude defining ... [Junior] as a 'relative.' Therefore, under the terms of the policy, ... [Junior] was not covered." *Id.*

The appellate court distinguished its prior holding in *Brown* on the narrower language in the State Farm policy:

> [Todd's] reliance on *Brown* ... is misplaced. The facts of *Brown* are similar except that the terms of that policy are distinguishable. ... The policy in *Brown* did not condition coverage on any particular class of vehicle or driver; it provided coverage for "any auto." The [appellate court there] determined that with no such conditions, the terms of the policy contemplated coverage for the non-insured's negligence. Here, [State Farm's] policy did condition coverage of non-owned cars to

the use by insureds. Since ... [Junior] failed to qualify as an insured, the policy in no way contemplated coverage to extend to his acts.

*Id.* at 902–03 (emphasis added).

D.

The State Farm policy issued to Sales "condition[ed] coverage of non-owned cars to the use by insureds." *Id.* As an insured, Sales was provided coverage for her liability arising from a relative's use of a non-owned car. However, Michelle did not live with Sales and thus was not a relative as that term is defined under the State Farm policy. We conclude, therefore, that the non-owned car endorsement in the State Farm policy did not impose a duty on State Farm to defend or indemnify Sales for her HRS § 577–3 liability.

VII.

A.

Next, Appellants argue that the phrase "any person" in the clause "any person ... wh[o] does not own or hire the car but is liable for its use by one of the above persons," refers to Michelle.[11] Appellants reason that "[n]either Michelle nor ... Sales owned the Jimmy, yet by virtue of [HRS § ] 577–3, both are liable for its use." In conjunction with this argument, Appellants maintain that the clause "[a]t best ... is ambiguous."

Contrary to Appellants' contention, HRS § 577–3 does not impose any liability on Michelle. HRS § 577–3 establishes vicarious liability for the parents of a minor child, that is, "[t]he father and mother of unmarried minor children [who] shall jointly and severally be liable in damages for tortious acts committed by their children[.]" Plainly, Michelle was not liable for any supposed use of the Jimmy by Sales since Michelle was a minor child, not a parent. In addition, there is no evidence that Sales "use[d]" the Jimmy. According to the facts agreed to, Michelle was not performing any tasks, errands or favors for Sales.

As a general rule, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy." HRS § 431:10–237 (1993). Applying that directive and "[g]iving due respect to the plain words of the [entire] policy," *Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court,* 68 Haw. 336, 341, 713 P.2d 427, 431 (1986), we conclude, based on the foregoing discussion, that the clause is not ambiguous.

B.

Additionally, as State Farm points out, the Jimmy would lose its status as a non-owned vehicle if Michelle were deemed to be an insured under its policy. The State Farm policy specifically provided that a "car which has been operated ... or in the possession of an *insured* during any part of each of the last [twenty-one] or more consecutive days" is not a non-owned car. (Emphasis in original.) An exclusion such as the twenty-one-day clause is intended to "prevent[ ] the insured from obtaining coverage on a regularly available vehicle without paying a premium." *Couch on Insurance 3d* § 118:1, at 118–7. According to Michelle's undisputed declaration, she had daily use of the Jimmy "for at least [twenty-one] consecutive days prior to the accident." Thus, assigning Michelle insured standing would nullify the Jimmy's status as a non-owned car.

VIII.

Third, Appellants contend that the court ruled "in effect [that HRS § 577–3] d[id] not confer vicarious liability to [sic] a divorce[d] parent living in a separate household when the minor child commits a tortious act with a motor vehicle not owned by said parent." We disagree with Appellants' characteriza-

11. Appellants do not argue that Michelle is a "relative" of Sales under the provisions of the State Farm policy. However, we conclude that Michelle is not a "relative" because she did not "live with" Sales. *See* discussion in text, *supra.*

tion of the court's order. The court found that Michelle was not an insured under the State Farm policy, and, thus, State Farm was not required to provide coverage for Sales's potential liability. Such a ruling would have no impact on Sales's legal liability under HRS § 577–3, only on whether coverage for her liability was afforded under State Farm's policy.

IX.

Finally, Appellants maintain that the court's ruling conflicts with the public policy underlying HRS § 577–3.

*Fortune v. Wong,* 68 Haw. 1, 702 P.2d 299 (1985), is relevant in that regard. There, Ronald Wong (Ronald), a minor, injured Derek Fortune (Fortune) while driving his parents' business car. *Id.* at 4–5, 702 P.2d at 302. The Wongs' policies included a homeowner's policy issued by First Insurance. *Id.* at 5, 702 P.2d at 302. Fortune's family sued the Wongs. *Id.*

First Insurance refused to participate in the Wongs' defense, arguing that its homeowner's "policy afforded no protection against liability stemming from a motor vehicle accident." *Id.* at 6, 702 P.2d at 303. The policy expressly excluded bodily injury or property damage arising out of the "ownership, maintenance, operation, [or] use ... of ... any motor vehicle owned or operated by or rented or loaned to any [i]nsured[.]" *Id.* at 10, 702 P.2d at 305.

The Hawai'i Supreme Court examined HRS § 577–3 in conjunction with the homeowner's policy and held that "the plain wording of the 'motor vehicle exclusion' [in the policy] enabled the insurance carrier to deny coverage." *Id.* at 4, 702 P.2d at 302. While HRS § 577–3 imposed liability on parents for the torts of their children, the court concluded that HRS § 577–3 did not govern the scope of liability under an insurance policy, stating, "We see nothing in the statute imposing liability on any other basis. Since the homeowner's policy was written to exclude coverage of bodily injury resulting from negligence in the operation of a motor vehicle, *the insurer is not liable for damages here, though the driver's parents undoubtedly are.*" *Id.* at 12, 702 P.2d at 307 (emphasis added).

We observe that HRS § 577–3 does not express any legislative intent to mandate automobile insurance coverage of a parent's statutory liability for a child's negligence. While HRS § 577–3 imposes liability, it does not, at the same time, require insurance companies to insure that liability.[12] *See State Farm Mut. Auto. Ins. v. Novak,* 167 Ariz. 363, 807 P.2d 531, 538 (Ariz.Ct.App.1990) (observing that "[o]ther courts have also rejected the argument that public policy requires coverage of a parent's liability whenever the parent is statutorily liable for the child's neglect"), *review denied,* 807 P.2d at 531 (Ariz.1991); *Quinn v. Gorman,* 354 So.2d 429, 430 (Fla.Dist.Ct.App.1978) (holding that public policy under a driver's license sponsorship law did not require coverage of mother's liability for the negligence of her daughter). *Cf. Salviejo v. State Farm Fire and Cas. Co.,* 87 Hawai'i 430, 431, 958 P.2d 552, 553 (App. 1998) (holding that judicial allowance of intrafamily tort suits did not constitute a public policy that would invalidate a homeowner's insurance policy provision that "exclude[d] personal liability coverage for bodily injury sustained by a named insured or a resident of the named insured's household, if the resident is a relative or 'any other person under the age of [twenty-one] who is in care of' either a named insured or a relative").

The supreme court has affirmed that " 'liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.' "[13] *First Ins.,* 66 Haw. at 423, 665 P.2d

12. In support of their argument that "parents' insurance policies ... [should] cover the parents' vicarious liability for their children's torts," Appellants direct us to *Scott v. American Standard Ins. Co. of Wisconsin,* 132 Wis.2d 304, 392 N.W.2d 461, 462–3 (Wis.Ct.App.1986) and *Brown v. Champeau,* 537 So.2d 1120 (Fla.Dist.Ct.App. 1989). As previously discussed, we do not believe those cases are pertinent, in light of the broad policy language they construed.

13. "The term 'public policy' ordinarily includes the notion of the general 'public good,' as well as the policies enunciated by the jurisdiction's con-

at 655 (quoting 6B J. Appleman, *Insurance Law and Practice* § 4255, at 40 (1979)). Obviously, then, parents cannot avoid liability under HRS § 577-3, and absent a legislative mandate, an insurer is not obligated to insure their liability unless coverage can be grounded on the terms of the subject policy itself. We conclude, therefore, that in this context, the State Farm policy did not violate public policy.

## X.

Accordingly, we affirm the court's (1) May 20, 1998 final judgment entered in favor of Michelle, Sales, and State Farm and against Appellants, and (2) June 10, 1998 judgment entered in favor of State Farm and against Appellants because, as a matter of law, the terms of the State Farm policy did not provide coverage for Sales's vicarious liability.

stitution, common or statutory laws, and judicial decisions[.]'" *Salviejo v. State Farm Fire and Cas. Co.*, 87 Hawai'i 430, 435, 958 P.2d 552, 557 (App.1998) (quoting 7 L. Russ & T. Segalla, *Couch on Insurance 3d* § 101-15, at 101-51 to 101-52 (1997) (footnotes omitted)).