MARTHA KAWAIHAE, Plaintiff-Appellee, *v.* HAWAIIAN INSURANCE COMPANIES, a Hawaii corporation, Defendant-Appellant

NO. 6666

NOVEMBER 19, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

356

OPINION OF THE COURT BY HAYASHI, C.J.

Defendant-appellant Hawaiian Insurance Companies (HIC) appeals from an Order for Payment of Attorney's Fees and Taxation of Costs in favor of plaintiff-appellee. The jury in the trial below had denied the plaintiff's claim, as a dependent of the deceased, for no-fault insurance benefits.

The question raised on appeal is whether plaintiff's claim was fraudulent, frivolous and/or excessive so as to preclude the court from awarding attorney's fees and costs pursuant to Hawaii Revised Statutes (HRS) § 294-30. We affirm the decision of the trial court which awarded fees and costs.

The relevant facts reveal the following: Appellee and the deceased, Godfrey Isabel, lived together from September, 1974 until Isabel died as a result of an automobile accident in June, 1975. Upon his death, the appellee filed a claim with HIC for no-fault insurance benefits. In her claim appellee alleged that she was a dependent of Godfrey Isabel in accordance with HRS § 294-4(1)(B).[1] That

---

[1] HRS § 294-4(1)(B) provides that:

(B) In the case of death arising out of a motor vehicle accident of any person, including the owner, operator, occupant, or user of the insured motor vehicle, or any pedestrian struck by said vehicle, the insurer shall pay, without regard to fault, to the legal representative of such person, for the

section defines dependent status by reference to Section 152 of the Internal Revenue Code of 1954. The provisions of Section 152 that appellee sought to base her claim for "dependent" status upon read as follows:

a) General Definition. For purposes of this subtitle, the *term dependent means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer* (or is treated under subsection (c) or (e) as received from the taxpayer): . . .

(9) *an individual* (other than an individual who at any time during the taxable year was the spouse, determined without regard to Section 143, of the taxpayer) *who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household.* (Emphasis added.)

Therefore, in order to qualify as a dependent under these provisions, appellee had to prove that 1) Isabel provided over one-half of her support for the calendar year beginning January 1, 1975, 2) the home of Isabel was her principal place of abode and 3) she was a member of Isabel's household.

The evidence presented at trial showed that the appellee, for the period January 1, 1975 through June 8, 1975, received welfare benefits of $1,840.00. For the same period Isabel received $160.00 in welfare benefits and $1,698.58 in wages. From September, 1974 to January 9, 1975 the appellee and Isabel lived with the appellee's brother and Isabel's sister. They then moved to an apartment where appellee paid the monthly rental of $150.00

---

benefit of the surviving spouse and any dependent, as defined in Section 152 of the Internal Revenue Code of 1954, of such person, an amount equal to the no-fault benefits payable to such spouse and dependent. as a result of the death of such person. . . .

out of her monthly welfare grant of $181.00. Isabel purchased food, linen and clothing for appellee and bought an automobile for their use. They moved in April to a rental house where it was established that each of them paid half of the monthly rental. The appellee testified that Isabel purchased furniture, linen and dishes and paid over half the utility bills. Isabel, in addition, supplied food through his hunting and fishing trips. The incomes of both the appellee and Isabel were supplemented by periodic monies given and loaned to them by their parents. At the time of Isabel's death, the appellee was pregnant with his child and testified of their plans to marry when he turned 18.

The trial court judge denied HIC's motions for summary judgment and directed verdict and the issue of whether or not the appellee was a dependent of Isabel and thereby entitled to no-fault insurance benefits upon his death was submitted to the jury. The jury denied appellee's claim, finding that she was not a dependent of Isabel. Appellee then filed a motion for taxation of attorney's fees and costs under HRS § 294-30, which provides:

HRS § 294-30. Claimant's attorney's fees. (a) A person making a claim for no-fault benefits *may* be allowed an award of a reasonable sum for attorney's fee, based upon actual time expended, and all reasonable costs of suit in an action brought against an insurer who denies all or part of a claim for benefits under such policy unless the court determines that the claim was fraudulent, excessive, or frivolous. (Emphasis added)

A hearing was held on the motion on March 24, 1977 and the trial court entered the order from which appeal has been taken.

This is a case of first impression in this state involving a novel provision with respect to the awarding of attorney's fees in no-fault insurance claims. A similar enactment has not been made by any of the states that have adopted various forms of no-fault insurance laws. Read in

conjunction with HRS § 294-4(3),[2] which provides, *inter alia,* for the mandatory payment of a claimant's attorney's fee where a claim is denied and suit is successfully brought to enforce it, it seems clear to us that under HRS § 294-30, the trial court judge has the discretion to award attorney's fees and costs to a losing claimant who files for no-fault insurance benefits unless it is determined by the trial court judge that the claim filed is fraudulent, frivolous or excessive.

Conceding trial court discretion to award fees under the statute, appellant contends that since the appellee's claim was in fact fraudulent or frivolous, or both, the trial court erred in granting appellee her attorney's fees and costs. Appellant argues that appellee's claim was fraudulent because appellee "knew" that Isabel was only supporting himself even though they lived together; that since Isabel received less in wages than appellee received in welfare benefits over the period of time of question, it was impossible for him to have contributed to anyone's support other than his own and, thus, the claim is fraudulent as that term is defined in Black's Law Dictionary (Fifth Ed., 1979):

> . . . done, made or effected with a purpose or design to carry out a fraud. . . .
>
> A statement, or claim or document is "fraudulent" if it was falsely made, or caused to be made, with the intent to deceive.

---

[2] HRS § 294-4(3) provides that:

(3) No part of no-fault benefits paid shall be applied in any manner as attorney's fees in the case of injury or death for which such benefits are paid. The insurer shall pay, subject to section 294-30, in addition to the no-fault benefits due, all attorney's fees and costs of settlement or suit, necessary to effect the payment of any or all no-fault benefits found due under the contract. Any contract in violation of this provision shall be illegal and unenforceable, and it shall constitute an unlawful and unethical act for any attorney to solicit, enter into, or knowingly accept benefits under any such contract.

Fraud is defined as

> A false representation of a matter of fact . . . which deceives and is intended to deceive another so that he shall act upon it to his legal injury. . . . Bad faith and fraud are synonymous. . . .

From the evidence before us, we cannot conclude that appellee's claim for no-fault insurance benefits was made with a purpose or design to carry out a fraud, nor can we conclude that her decision to bring suit on this matter was done with the intent to deceive. Nothing in the record supports a conclusion that appellee's claim was made in bad faith or was dishonest. A denied claim for no-fault insurance benefits is not categorically fraudulent unless it is falsely made or caused to be made with the intent to deceive. In fact, at the hearing on the motion for taxation of attorney's fees and costs counsel for the appellant himself stated:

> I am not saying that the mere fact that they lost, would preclude them, from getting attorneys fees.
>
> Because right now, we are handling a lot of cases, that we know, that even though the claimant may lose, we don't consider them fraudulent or frivolous, and we will pay attorney's fees on them.

We find no error in the court's conclusion that appellee's claim was not fraudulent.

Appellant also argues that the claim is frivolous. Our supreme court in ruling on this question has stated:

> For an assignment of error to be frivolous within the meaning of that term, it must be manifestly and palpably without merit.

*R. W. Meyer, Ltd. v. McGuire*, 36 Haw. 184, 187 (1942).

The New York Supreme Court has defined frivolous matter thusly:

> Frivolous matter in a complaint is matter which is so clearly and palpably bad as to indicate bad faith on the part of the pleader and as to require no argument to convince the court thereof.

*Smith v. Smith*, 216 N.Y.S.2d 822, 824 (1961).

A similar finding was reached by the District Court of the United States in New Jersey:

> Frivolous pleas are those which are so clearly and palpably bad as to require no argument to convince the court thereof and which would be pronounced by the court as indicative of bad faith in the pleader on a mere inspection.

*United States v. Delaney*, 8 F.Supp. 224, 227 (D.C. N.J. 1934).

Appellant's argument that the appellee's claim is frivolous because she *knew* she was supporting Isabel and therefore trial to determine her dependent status within the meaning of the statute was unnecessary — is not realistic. We do not believe that the appellee's claim for no-fault benefits as a dependent of Isabel was so manifestly and palpably without merit, so as to indicate bad faith on her part such that argument to the court was not required. Appellant's argument that the appellee *knew* she was not receiving half of her support from Isabel is apparently based upon the bare, stated dollar amounts each of them contributed by way of welfare or wages for the stated time period. Were that the only basis for determination of her status, the case would have been summarily dismissed. The dollar amounts contributed by Isabel and the appellee were stipulated to by counsel and are nearly equal.

Obviously then the court found that these monetary contributions alone were not conclusive on the issue of support. Indeed, the Internal Revenue Code at § 1.152-1(a)(2)(i) defines support to include "food, shelter, clothing, medical and dental care, education and the like."[3]

---

[3] IRC Regulation §1.152-1(a)(2)(i) provides that:

(2)(i) For purposes of determining whether or not an individual received, for a given calendar year, over half of his support from the taxpayer, there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received

Given our inflationary times, the value to be placed upon the food Isabel obtained from his hunting and fishing activities is certainly not minute. There was also testimony that Isabel gathered and sold opihis to supplement the household income. None of this evidence conclusively establishes that the claim for no-fault insurance benefits filed by the appellee was frivolous. Indeed, had the trial court been inclined to rule that the claim was fraudulent and/or frivolous, it would not have denied the appellant's motions for summary judgment and directed verdict.

A motion for summary judgment is properly granted under H.R.C.P. 56(c) if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979). The motion for summary judgment and the motion for directed verdict are analogous in that in both the movant asserts that there are no general issues of material fact to be resolved and that the party is entitled to judgment as a matter of law. Where the proffered facts on a motion for summary judgment or the evidence at trial on a motion for directed verdict and the inferences which may fairly be drawn from them, are reasonably susceptible to conflicting interpretations, neither the motion for summary judgment, nor the directed verdict will be given. *Fry v. Bennett,* 59 Haw. 279, 280, 580 P.2d 844 (1978). Since the trial court judge found that the issue of the appellee's dependent status was not an appropriate matter for action by way of a directed verdict or summary judgment, an inference is certainly raised that the issue of her dependent status within the meaning of the statute is not frivolous.

---

from all sources, including support which the individual himself supplied. The term "support" includes food, shelter, clothing, medical and dental care, education, and the like. Generally, the amount of an item of support will be the amount of expense incurred by the one furnishing such item. If the item of support furnished an individual is in the form of property or lodging, it will be necessary to measure the amount of such item of support in terms of its fair market value.

In his opening brief and at the hearing on the motion for attorney's fees and costs, counsel for appellant stated that he was not raising the question of whether the attorney's fee in the amount of $4,000.00 was excessive under HRS § 294-30, and appeal was being taken only to determine whether the court erroneously awarded attorney's fees and costs on a fraudulant and/or frivolous claims. However, in his reply brief he urges, for the first time, that where a claim is denied in its entirety such claim is excessive as a matter of law, and that the construction adopted by the trial judge in allowing attorney's fees to an unsuccessful claimant under HRS § 294-30 is unconstitutional. We find these contentions without merit.

Appellee requests that we remand the case to the trial court for an order allowing appellee her reasonable attorney's fees and costs incurred on this appeal. In our view, HRS § 294-30 applies to all attorney's fees whether for trial or appeal. However, the fact that appellee has been awarded attorney's fees incurred with respect to the trial does not require that she be awarded attorney's fees incurred with respect to the appeal. We rule that the issue of fees on appeal should be decided by the trial court in the exercise of its discretion pursuant to HRS § 294-30.

Finding no error, the order is affirmed and this case is remanded back to the trial court for action on appellee's request for attorney's fees and costs incurred on appeal.

*Walter Davis (Annette Y. W. Chock* with him on the briefs), *Davis, Witherwax, Playdon & Gerson* of counsel, for defendant-appellant.

*Sylvester V. Quitiquit (Valta A. Cook* with him on the brief), *Cook, Choi, Yuda & Quitiquit* of counsel, for plaintiff-appellee.