298 P.3d 1034

**Emerson M.F. JOU, M.D.,
Petitioner/Provider–
Appellant,**

v.

**J.P. SCHMIDT, Insurance Commissioner,
Department of Commerce and Consumer
Affairs, State of Hawai'i, Respondent/Respondent–Appellee,**

and

**Dai–Tokyo Royal Insurance Company,
Respondent/Respondent–Appellee.**

No. SCWC–29868.

Supreme Court of Hawai'i.

April 16, 2013.

See also 117 Hawai'i 477, 184 P.3d 792, and 1
Haw.App. 355, 619 P.2d 1086.

Stephen M. Shaw, Honolulu, for petitioner/provider-appellant.

J. Patrick Gallagher, for respondent/respondent-appellee Dai–Tokyo Royal Insurance Company.

Elmira K.L. Tsang, Honolulu, for respondent/respondent-appellee J.P. Schmidt, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai'i.

NAKAYAMA, Acting C.J., ACOBA, McKENNA, and POLLACK,[1] JJ., and Circuit Judge KIM, In Place of RECKTENWALD, C.J., Recused.

Opinion of the Court by NAKAYAMA, Acting C.J.

When a medical provider has challenged a reduction or denial of payment from an insurer prior to exhaustion of benefits under an insured's policy, the provider's pursuit of his or her claim for those benefits, even if ultimately unsuccessful, is not unreasonable for the purpose of seeking attorney's fees and costs pursuant to Hawai'i Revised Statutes (HRS) § 431:10C–211 (a).

In this case, Petitioner/Provider–Appellant Emerson M.F. Jou, M.D. challenged the partial denial of personal injury protection benefits after treating a patient insured by Respondent/Respondent–Appellee Dai–Tokyo Royal Insurance Company (DTRIC). While Jou's request for an administrative hearing was pending in the Insurance Division of the State Department of Commerce and Consumer Affairs (DCCA), the insured's available benefits under her policy were exhausted on account of payments to Jou and other medical providers. Due to the exhaustion, the Insurance Division dismissed Jou's claim, and the Circuit Court of the First Circuit[2] and the ICA affirmed that decision.

Jou also requested attorney's fees and costs under HRS § 431:10C–211(a), which allows fees and costs to be awarded even when a party does not prevail on its claim for benefits; pursuant to a remand order of the ICA, the circuit court denied the request because it found Jou's pursuit of the benefits to be unreasonable given that DTRIC's obligation to pay benefits to the insured's medical providers was satisfied once the insured's policy limits had been reached. The ICA also affirmed that decision; consequently, only the issue of fees and costs is before us in this case.

Because we disagree with the circuit court and the ICA that Jou's claim was unreasonable for the purpose of awarding attorney's fees and costs under HRS § 431:10C–211(a), we vacate the judgments of both the ICA and the circuit court and remand this case to the circuit court for further proceedings.

## I. BACKGROUND

### A. Background in Appeal No. 28106

#### 1. *Factual Background and DCCA Hearing*

Norma Agbayani was injured in a motor vehicle accident on November 27, 1995; she was insured by DTRIC and treated by Jou and other doctors. After treatment, Jou sent a total of three separate bills to DTRIC requesting payment; DTRIC paid Jou, but based on reductions in payments made after the billing statements were reviewed by DTRIC, Jou claimed that DTRIC wrongly withheld payment in a total amount of $1,189.65 between December 1995 and May 1996.

On December 9, 1998, Jou requested a hearing with DCCA's Insurance Division to review the payment reductions. On May 2,

---

1. Associate Justice Pollack was initially assigned to this case as a substitute justice by reason of vacancy while he was a judge of the Circuit Court of the First Circuit. He subsequently became a member of this court on August 6, 2012.

2. The Honorable Eden Elizabeth Hifo presided.

2002, the Insurance Division's Office of Administrative Hearings docketed Jou's request for a hearing; however, on May 20, 2002, the status conference on the matter was taken off the calendar due to Jou's failure to file a prehearing statement.[3]

Thereafter, on February 10, 2003, DTRIC notified Jou that Agabayani's no-fault benefits in the amount of $20,000.00 had been exhausted as of February 3, 1999.

On January 27, 2005, after the matter had been restored to the calendar, the administrative hearings officer held a hearing on DTRIC's motion for summary judgment. The hearings officer held that because Agbayani's no-fault benefits had been exhausted, Jou's request for payment of the withheld $1,189.65 amount was moot; accordingly, the hearings officer recommended on April 13, 2005 that DTRIC's motion for summary judgment be granted and that the matter be dismissed. On May 12, 2005, Insurance Commissioner J.P. Schmidt adopted the hearings officer's findings and recommended order, granted DTRIC's motion, and dismissed the matter. As the hearings officer recommended, Schmidt also ordered that the parties bear their own attorney's fees and costs.

### 2. Circuit Court Proceedings

On June 13, 2005, Jou filed his notice of agency appeal to circuit court pursuant to

Hawai'i Revised Statutes (HRS) § 91–14.[4] In his agency appeal, Jou primarily argued that Schmidt erred by deciding that the case was moot, due to the exhaustion of Agbayani's no-fault benefits, in lieu of reaching the merits of the case regarding the billing dispute between Jou and DTRIC. Jou also argued that DTRIC was required, but failed, to issue a formal notice of denial after it reduced his payments. In response, both Schmidt and DTRIC pointed out that Jou never challenged the hearing officer's finding of fact that Agbayani's no-fault benefits were exhausted as of February 3, 1999. However, they maintained that even if Jou had challenged the finding, his claim for payment would still fail because DTRIC's contractual obligation to pay no-fault benefits ceased once DTRIC had paid all of the $20,000 in benefits provided for in Agbayani's policy. DTRIC also argued in its brief that Jou's claims were barred because, pursuant to HRS § 431:10C–212,[5] Jou was required to request a hearing regarding DTRIC's denial of his claim for payment within sixty days of the denial; however, he did so on December 9, 1998, more than two years after the last challenged denial dated June 13, 1996. In an order dated July 18, 2006, the circuit court affirmed Schmidt's decision, concluding that the Insurance Division's findings of fact were not erroneous and conclusions of law were correct. Final judgment was also entered on July 18, 2006.

---

**3.** The Office of Administrative Hearings notified Jou on June 18, 2004, over two years later, that it proposed to dismiss the matter because a prehearing statement had not yet been filed. On June 23, 2004, Jou filed a request for a hearing to contest the proposed dismissal. Although there is no indication in the record that such a hearing was held or that a prehearing statement was received from Jou, the administrative hearings officer dissolved the notice of proposed dismissal and scheduled a new status conference on June 29, 2004. Jou then filed his prehearing statement on July 29, 2004.

**4.** HRS § 91–14 (Supp.2004) provided then, as it does now, in pertinent part:

(a) Any person aggrieved by a final decision and order in a contested case ... is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law....

(b) Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court ....

**5.** HRS § 431:10C–212 (1993) provided then, as it does now, in pertinent part:

(a) If a claimant or provider of services objects to the denial of benefits by an insurer or self-insurer pursuant to section 431:10C–304(3)(B) and desires an administrative hearing thereupon, the claimant or provider of services shall file with the commissioner, within sixty days after the date or denial of the claim, the following:

(1) Two copies of the denial;
(2) A written request for review; and
(3) A written statement setting forth specific reasons for the objections....

### 3. The ICA's August 27, 2008 Summary Disposition Order

Jou timely appealed on August 16, 2006. In the ICA, Jou argued that the circuit court (1) erred in finding DTRIC was not required to issue a Notice of Denial after it made reduced and partial payments on his claims; (2) erred in finding his claim against DTRIC was moot on the grounds that [Agbayani]'s no-fault benefits had already been exhausted; (3) erred in failing to order DTRIC to pay interest, attorney's fees and costs; (4) erred in affirming erroneous Findings of Fact and Conclusions of Law; and (5) violated his due process and equal protection rights, and made a "regulatory taking" of his interest in balances, in violation of the Hawai'i and U.S. constitutions.

*Jou v. Schmidt*, No. 28106, — Hawai'i —, 2008 WL 3919856, at *1 (Haw.App. Aug. 27, 2008) (SDO) (formatting altered). Pursuant to a different case also entitled *Jou v. Schmidt*, 117 Hawai'i 477, 486, 184 P.3d 792, 801 (App.2008), the ICA agreed with Jou's first point of error that the circuit court "erred in finding that DTRIC was not required to issue a formal notice of denial of benefits pursuant to HRS § 431:10C-304(3)(B) [6] after it made both reduced and partial payments on Jou's claims." *Id.* However, the ICA rejected Jou's other arguments or otherwise found them to be without merit, noting that insurers may limit liability by the terms of an insurance policy and agreeing with Schmidt and the circuit court that Jou was not entitled to payment after Agbayani reached the $20,000 limit of available no-fault benefits. *See id.* at *2 (citing *Salviejo v. State Farm Fire & Cas. Co.*, 87 Hawai'i 430, 434–35, 958 P.2d 552, 556–57 (App.1998); *Crawley v. State Farm Mut. Auto. Ins. Co.*, 90 Hawai'i 478, 484, 979 P.2d 74, 80 (App. 1999); *Foote v. Royal Ins. Co. of Am.*, 88 Hawai'i 122, 125, 962 P.2d 1004, 1007 (App. 1998); *Hosp. for Joint Diseases v. State Farm Mut. Auto. Ins. Co.*, 8 A.D.3d 533, 779

N.Y.S.2d 534, 535 (2004)). The ICA so concluded based on a plain reading of HRS § 431:10C-304(1) (Supp.1998), which provided:

Except as otherwise provided in section 431:10C-305(d), in the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, the provider of services on behalf of the following persons who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, <u>an amount equal to the personal injury protection benefits</u> as defined in section 431:10C-103.5(a) payable for expenses to that person as a result of the injury:

(A) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;

(B) Any pedestrian (including a bicyclist); or

(C) Any user or operator of a moped as defined in section 249–1[ .]

*Id.* at *1 (emphasis in original). Thus, "[o]nce DTRIC paid the full amount of the policy limits, its obligation to pay any additional outstanding bills due to the providers was extinguished." *Id.* at *2. The ICA specifically noted that Jou never challenged that the policy limit was $20,000, but only the conclusion that DTRIC "had no further responsibility for the bills incurred by the insured." *Id.* Because Jou did not appeal the finding of fact that Agbayani's benefits were exhausted, the ICA concluded that "the [c]ircuit [c]ourt did not err in rejecting Jou's claim that he was entitled to additional payment from DTRIC." *Id.*

The ICA also rejected Jou's argument that he should have been granted costs, attorney's fees, and interest pursuant to HRS § 431:10C-304(4) and (5). HRS § 431:10C-304(4) provided:

Amounts of benefits which are unpaid thirty days after the insurer has received rea-

---

**6.** HRS § 431:10C-304(3)(B) (Supp.1998) provided then, as it does

> If the insurer elects to deny a claim for benefits in whole or in part, the insurer shall, within thirty days, notify the claimant in writing of the denial and the reasons for the denial. The

> denial notice shall be prepared and mailed by the insurer in triplicate copies and be in a format approved by the commissioner. In the case of benefits for services specified in section 431:10C-103.5(a) the insurer shall also mail a copy of the denial to the provider[.]

sonable proof of the fact and the amount of benefits accrued, and demand for payment thereof, after the expiration of the thirty days, shall bear interest at the rate of one and one-half per cent per month[.]

On this point, the ICA concluded that Jou did not "present any discernible argument that DTRIC failed to pay interest on any amounts that were determined to be due to him, but had remained unpaid after the expiration of the thirty-day period specified in the statute." *Jou,* 2008 WL 3919856, at *3. HRS § 431:10C–304(5) provided:

No part of no-fault benefits paid shall be applied in any manner as attorney's fees in the case of injury or death for which the benefits are paid. The insurer shall pay, subject to section 431:10C–211, in addition to the no-fault benefits due, all attorney's fees and costs of settlement or suit necessary to effect the payment of any or all no-fault benefits found due under the contract. Any contract in violation of this provision shall be illegal and unenforceable. It shall constitute an unlawful and unethical act for any attorney to solicit, enter into, or knowingly accept benefits under any contract[.]

The ICA pointed out that according to this section, costs and fees are available "only if a claimant prevails in a settlement or suit for no-fault benefits." *Jou,* 2008 WL 3919856, at *3 (citing *Iaea v. TIG Ins. Co.,* 104 Hawai'i 375, 380, 90 P.3d 267, 272 (App.2004)). Because Jou did not prevail on his claim for no-fault benefits due to their exhaustion, the ICA concluded that subsection (5) did not support his argument for fees and costs. *Id.* Nevertheless, the ICA pointed to a section not cited by Jou, HRS § 431:10C–211(a),[7] to suggest that fees and costs may be awarded even when a claimant is unsuccessful in seeking benefits. *Id.* The ICA thus affirmed the circuit court's judgment. *Id.*

Subsequent to the filing of the SDO, Jou filed a "Request for Attorney's Fees and Costs on Appeal" on September 5, 2008, citing HRS § 431:10C–211(a). On October 8, 2008, the ICA issued an order remanding the case to the circuit court for the determination of an award of appellate attorney's fees, if any. In the order, the ICA noted that although $8,760.00 of the requested $9,172.77 in fees appeared to be reasonably incurred, Jou was the non-prevailing party in both the circuit court and on appeal, and therefore further proceedings in circuit court were necessary pursuant to *Kawaihae v. Hawaiian Insurance Cos.,* 1 Haw.App. 355, 362, 619 P.2d 1086, 1092 (1980), to determine whether Jou's claim was "unreasonable, fraudulent, excessive, or frivolous" under HRS § 431:10C–211(a) and *Iaea.* The ICA then filed its judgment on appeal in No. 28106 on November 19, 2008.

**B. Background in Appeal No. 29868 (The Present Appeal)**

*1. Proceedings in Circuit Court on Remand*

On February 3, 2009, Jou filed his motion in circuit court for appellate attorney's fees and costs. Schmidt and DTRIC both opposed the motion, and the circuit court held a hearing on March 18, 2009. At that hearing, the circuit court made the finding, pursuant to HRS § 431:10C–211(a), that Jou's claim was unreasonable and thus denied Jou's motion. Specifically, the circuit court stated that "the insurance company had zero, none, not any obligation to pay beyond the policy limit which it was always agreed, understood and uncontested had been exhausted and, therefore, I find the claim to be unreasonable and therefore deny the motion." The circuit court subsequently filed a written order on May 19, 2009.

After the hearing, Jou filed a motion on March 30, 2009 "to amend/correct or recon-

7. HRS § 431:10C–211(a) (1993) provided, in pertinent part:

A person making a claim for no-fault benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought by or against an insurer who denies all or part of a claim for benefits under the policy, unless the court upon judicial

proceeding or the commissioner upon administrative proceeding determines that the claim was unreasonable, fraudulent, excessive or frivolous. Reasonable attorney's fees, based upon actual time expended, shall be treated separately from the claim and be paid directly by the insurer to the attorney.

sider" his original motion for fees and costs. In that motion, Jou essentially argued that although he did not prevail due to the finding that benefits were exhausted, the circuit court should not deny fees because his claim was not unreasonable when originally made. Only DTRIC opposed this motion; its position was that all of the fees requested were incurred by Jou starting in 2004, after the subject benefits were already exhausted, and therefore it was unreasonable for him to incur those fees in pursuit of his claim. On May 19, 2009, the circuit court entered an order denying the motion. Accordingly, the circuit court also entered the Final Judgment on Remand on May 19, 2009.

### 2. The ICA's April 2, 2012 Summary Disposition Order

Jou timely appealed on June 2, 2009. On this second appeal of the case, Jou argued that, in light of the ICA's remand order, the circuit court erred by not only declining to award him appellate attorney's fees but also his fees for pursuing his claim before DCCA and the circuit court. Jou also pointed out that because Agbayani's no-fault benefits were not exhausted at the time he originally filed his claim with DCCA, his claim was reasonable and the circuit court erred in concluding otherwise. Jou also noted that he had prevailed with respect to the issue of whether DTRIC was obliged to provide him formal notices of the denial of payment.

In response, DTRIC argued that the circuit court did not abuse its discretion in denying Jou's request for fees because it "correctly applied HRS § 431:10C–211(a)." In response to Jou's contention that he should be awarded fees because he was the prevailing party on the first appeal, DTRIC noted that although the ICA agreed with Jou that DTRIC had to issue formal notices of denial of benefits, it also rejected his argument that he was entitled to payment after the available no-fault benefits had been exhausted and therefore affirmed the circuit court's judgment in favor of DTRIC. According to DTRIC, Jou was therefore not the prevailing party on the first appeal and was not entitled to an award of fees and costs. Regarding an insurance claimant who does

not prevail, DTRIC noted that the trial court has complete discretion in awarding fees and costs. (Citing *Wong v. Hawaiian Ins. Cos.,* 64 Haw. 189, 192, 637 P.2d 1144, 1146 (1981)). Thus, DTRIC argued that it was within the circuit court's discretion to deny Jou's request for fees and costs based on its conclusion that pursuing the claim for benefits was unreasonable where there was no dispute that the benefits had long been exhausted. Finally, DTRIC challenged Jou's argument that it was " 'exculpat[ing] itself' from an extra-contractual liability" it owed to him for the claimed benefits, attorney's fees, and costs because it did not send him the required formal notice of denial of benefits pursuant to HRS § 431:10C–304(3)(B). On that issue, DTRIC simply pointed out that the only issue before the ICA on appeal from the circuit court's final judgment on remand was whether the circuit court properly denied Jou's request for appellate attorney's fees and costs, not whether DTRIC was otherwise liable to Jou. Schmidt filed a short brief with the ICA in this second appeal largely echoing DTRIC's brief. Nevertheless, he also emphasized that the only issue within the scope of the ICA's remand was Jou's request for appellate attorney's fees and costs; consequently, the circuit court did not have jurisdiction to consider any of Jou's other arguments seeking to have the circuit court change or modify its previous rulings against him.

In its SDO, the ICA first recognized that Jou's points of error addressing issues other than his request for appellate attorney's fees and costs were beyond the scope of remand and thus without merit. *Jou v. Schmidt,* No. 29868, 127 Hawai'i 3, 274 P.3d 1247, 2012 WL 1088713, at *2 (App. Apr. 2, 2012) (SDO). As for the fees and costs issue, the ICA concluded that the circuit court did not abuse its discretion in denying Jou's request. *Id.* at *3. The ICA acknowledged but rejected Jou's contention that the circuit court should have awarded attorney's fees and costs on the ground that his claim was reasonable when first instituted. *Id.* While initial reasonableness was one factor in considering the request, the ICA noted that because the request was only for appellate fees, "it was also appropriate for the court to consider ...

whether it was reasonable to continue to pursue the claim through a secondary appeal, even though the PIP [no-fault] benefits had long been exhausted and the claimant had, in effect, conceded that the benefits were exhausted." *Id.* (citing *Kawaihae,* 1 Haw.App. at 362, 619 P.2d at 1092 ("[T]he fact that appellee has been awarded attorney's fees incurred with respect to the trial does not require that she be awarded attorney's fees incurred with respect to the appeal ... the issue of fees on appeal should be decided by the trial court in the exercise of its discretion[.]")). The ICA also rejected Jou's argument that he should be awarded fees because it agreed with him in the previous appeal that DTRIC was required to issue formal notices of denial of benefits pursuant to HRS § 431:10C–304(3)(B). *Id.* On that issue, the ICA noted that DTRIC's failure to issue the notices only exposed it to potential civil penalties under HRS § 431:10C–117(b) and (c).[8] *Id.* The ICA specifically noted, however, that such failure did not individually provide Jou a remedy against DTRIC. *Id.* Accordingly, the ICA entered its judgment on May 14, 2012 affirming the circuit court's judgment on remand.

Jou then filed his application for writ of certiorari on May 14, 2012. Neither Schmidt nor DTRIC filed a response to the application.

## II. STANDARD OF REVIEW

### A. Motion for Attorney's Fees and Costs

▪ This court reviews the trial court's grant or denial of attorney['s] fees and costs under the abuse of discretion standard. *Price [ v. AIG Haw. Ins. Co.],* 107 Hawai'i [106,] 110, 111 P.3d [1,] 5 [ (2005) ] (citations omitted).

The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assess-

ment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Id.* (citations omitted).

*Enoka v. AIG Haw. Ins. Co.,* 109 Hawai'i 537, 544, 128 P.3d 850, 857 (2006).

## III. DISCUSSION

The only issue in this case is whether Jou is entitled to attorney's fees and costs under HRS § 431:10C–211(a) on the ground that it was reasonable for him to pursue the first appeal in this case even though he acknowledged that the no-fault benefits under the policy were already exhausted. Although there are no prior Hawai'i cases defining "unreasonable" for purposes of HRS § 431:10C–211(a), we are guided by Black's Law Dictionary, which defines "unreasonable" as "[n]ot guided by reason; irrational or capricious." *Black's Law Dictionary* 1679 (9th ed.2009). Based on the following, because Jou requested a hearing to challenge the reduced billings long before the no-fault benefits in Agbayani's policy were exhausted, we disagree with the conclusion of the circuit court and the ICA that Jou's claim was unreasonable under HRS § 431:10C–211(a).

The ICA's remand order in the first appeal, No. 28106, specifically stated that "a further proceeding is necessary to determine whether [Jou's] claim was 'unreasonable, fraudulent, excessive, or frivolous[ ]' " because he was not the prevailing party in that appeal with respect to the claim for the unpaid no-fault benefits. The ICA recognized that, pursuant to HRS § 431:10C–211(a), a party that does not prevail as to the benefits can nevertheless be awarded attorney's fees and costs. (Citing *Iaea,* 104 Hawai'i at 382, 90 P.3d at 274). However, the ICA remanded for further proceedings in

8. HRS § 431:10C–117 (2005) provided then, as it does now, in pertinent part:

    (b) Any person, in the capacity of a licensed or unlicensed motor vehicle insurer, self-insurer, producer, or other representative, who violates any provision of this article shall be assessed a civil penalty not to exceed $5,000 for each violation.

    (c) Any person, in the capacity of a licensed or unlicensed motor vehicle insurer, self-insurer, producer, or other representative, who knowingly violates any provision of this article shall be assessed a civil penalty of not less than $3,000 and not to exceed $10,000 for each violation.

circuit court on the authority of *Kawaihae*, which stated that "the issue of fees on appeal should be decided by the trial court in the exercise of its discretion pursuant to HRS § 294–30." (Quoting *Kawaihae*, 1 Haw.App. at 362, 619 P.2d at 1092) (internal quotation marks omitted). HRS § 294–30 was the predecessor statute to HRS § 431:10C–211(a). *See, e.g., Enoka*, 109 Hawai'i at 561, 128 P.3d at 874. On remand, as noted, the circuit court subsequently found that Jou's claim was unreasonable and thus denied the request for appellate fees and costs.

In affirming the circuit court's judgment on remand in this second appeal, the ICA noted in particular that the no-fault benefits at issue were exhausted long before any appeal was taken and that Jou never challenged the factual finding that the benefits were completely exhausted. *Jou*, 2012 WL 1088713, at *2. Accordingly, the ICA concluded that "therefore, further fees incurred in pursuing [the no-fault] benefits on appeal from the [c]ircuit [c]ourt to [the ICA] were not reasonably incurred." *Id.* The ICA also further explained that the reasonableness inquiry included questioning "whether it was reasonable to continue to pursue the claim through a secondary appeal, even though the [no-fault] benefits had long been exhausted and [Jou] had, in effect, conceded that the benefits were exhausted." *Id.* at *3.

▮▮▮ The statutes that govern attorney's fees and costs in suits seeking payment of no-fault benefits pursuant to an insurance contract are HRS §§ 431:10C–211(a) and 431:10C–304(5). As the ICA has summarized these two related statutes:

> Construing HRS §§ 431:10C–211(a) and 431:10C–304(5) according to the foregoing principles of statutory construction, we conclude [ ... ] that: (1) an award of attorney's fees and costs is mandatory [under HRS § 431:10C–304(5) ] if a claimant prevails in a settlement or suit for no-fault benefits; and (2) an award of attorney's fees and costs may, in the exercise of a court's or the [Insurance] Commissioner's discretion, be awarded to a nonprevailing claimant [under HRS § 431:10C–211(a) ], as long as the claim is not determined to

be unreasonable, fraudulent, excessive, or frivolous.

*Iaea*, 104 Hawai'i at 379, 90 P.3d at 271. Thus, first, we recognize that Jou is not entitled to fees and costs under HRS § 431:10C–304(5). Under that section, an insurer "shall pay" attorney's fees and costs "in addition to[,]" and thus separately from, personal injury protection benefits due to a medical provider, but only when those fees and costs are "necessary to effect the payment of any or all personal injury protection benefits <u>found due under the contract</u>." (Emphases added). Here, fees and costs could not be awarded under HRS § 431:10C–304(5) because Jou did not succeed in recovering the payments withheld by DTRIC in the amount of $1,189.65.

However, pursuant to HRS § 431:10C–211(a) and *Iaea*, fees and costs may be allowed in the situation where a claimant does <u>not</u> prevail "in an action brought by or against an insurer who denies all or part of a claim for benefits under the policy[.]" Nevertheless, the claimant cannot be awarded fees and costs under that section where "the court upon judicial proceeding ... determines that the claim was unreasonable, fraudulent, excessive, or frivolous." HRS § 431:10C–211(a). Here, the circuit court on remand entered a finding on the record that Jou's claim was unreasonable at the appellate level because the benefits were already exhausted and there was no way Jou could effect payment of the disputed amount; the circuit court thus denied Jou's request for costs and fees. Our review of the circuit court's decision is for an abuse of discretion.

**A. The circuit court and the ICA erred in concluding that Jou's claim was unreasonable due to exhaustion of benefits where Jou had made his claim prior to that exhaustion**

Jou filed his agency appeal in circuit court on June 13, 2005, and he subsequently appealed to the ICA on August 16, 2006. On December 7, 2005, this court decided *Orthopedic Associates of Hawai'i, Inc. v. Hawaiian Insurance & Guaranty Co.*, 109 Hawai'i 185, 124 P.3d 930 (2005). In that case, numerous medical providers brought a com-

plaint against several insurers for the alleged underpayment of claims for services rendered under the insurers' respective no-fault insurance contracts. *Id.* at 191, 124 P.3d at 936. The complaint sought injunctive and declaratory relief against down-coding of the providers' bills, as well as damages for the underpaid amounts of the bills. *Id.* 124 P.3d at 937. The circuit court had entered summary judgment for the insurers. *Id.* at 193, 124 P.3d at 938.

This court reversed, beginning our analysis by reaffirming an insurer's obligation, codified in statute, to pay no-fault benefits within thirty days after the insurer had received from the provider reasonable proof of the fact and amount of benefits. *Id.* at 194–95, 124 P.3d at 939–40. This court held both that an insurer had an obligation to give notice to a provider if the insurer elected to deny a claim for treatment and/or costs in whole or in part, and that an insurer was not authorized to down-code providers' bills. *Id.* at 194–96, 124 P.3d at 939–41. The case was remanded for further proceedings. *Id.* at 198, 124 P.3d at 943.

Jou therefore filed the first appeal to the ICA in this case in light of the *Orthopedic Associates* decision, a favorable ruling for medical providers in a case factually similar to this one. The ICA nevertheless held in this case that because the no-fault benefits under Agbayani's policy had become exhausted in the course of litigation—specifically, after Jou initially sought review of the insurer's denial but before Jou appealed—DTRIC's obligation to pay Jou's outstanding bills was extinguished. *Jou,* 2008 WL 3919856, at *1–2. This, however, was by no means a foregone conclusion.

When Jou first appealed, there were no published cases in this jurisdiction holding that a provider who filed a claim with an insurer before a policy was exhausted could not recover for a wrongfully denied claim if the benefits subsequently became exhausted. The circuit court, however, assumed that Jou would not be able to recover after the policy limits were reached in the course of litigation. Thus, at the conclusion of the hearing on Jou's motion for fees and costs, the circuit court stated:

[I]n reading the decision of the [ICA] that led to the order of remand, it's perfectly clear as was pointed out at page two from [DTRIC's] memo in op[position] that the insurance company had zero, none, not any obligation to pay beyond the policy limit which it was always agreed, understood and uncontested had been exhausted, and therefore I find the claim to be unreasonable and therefore deny the motion.

It may be that the ICA's first SDO in this case suggested that there was greater certainty surrounding this issue. The ICA reasoned that it was well-recognized that an insurer had the right to limit its liability by the terms of its policy. *Jou,* 2008 WL 3919856, at *1–2. However, the Hawai‘i cases cited by the ICA to support the corollary that a provider in Jou's circumstances could not recover were neither directly on point nor dispositive of Jou's case. *Id.* The cited cases all addressed whether an insurer could limit its liability through the language of a policy, an issue that was not relevant to this case as there was no dispute over whether Agbayani was entitled to benefits under the policy. *See id.* (citing *Salviejo v. State Farm Fire & Cas. Co.,* 87 Hawai‘i 430, 958 P.2d 552 (App.1998) (holding that an insurer could limit its liability through a household exclusion in its policy and that the exclusion did not violate public policy); *Crawley v. State Farm Mut. Auto. Ins. Co.,* 90 Hawai‘i 478, 979 P.2d 74 (App.1999) (affirming that insurers have the right to limit liability and holding that a clause in a mother's automobile policy did not provide coverage for her imputed statutory liability for her nonresident minor child's accident); *Foote v. Royal Ins. Co. of Am.,* 88 Hawai‘i 122, 962 P.2d 1004 (App.1998) (holding that a "family member" clause did not render a policy ambiguous and that an officer or shareholder of a closely-held corporation was not entitled to uninsured motorist benefits as a "named insured" under a business policy)).

The ICA also cited a New York case to support its holding, but that case was also distinguishable. In *Hospital for Joint Diseases v. State Farm Mutual Automobile Insurance Co.,* the court held that an insurer was not required to pay a hospital for ser-

vices provided to an insured where the insurer had already paid the full policy benefits. 8 A.D.3d 533, 779 N.Y.S.2d 534, 535 (2004). However, in that case, it appeared that the hospital's claim to the insurer was not made until *after* the benefits under the policy were already exhausted: "The evidence submitted by the defendant was sufficient to establish that the subject policy limits for personal injury protection benefits had been exhausted by prior claims." *Id.* (emphasis added).

In fact, the uncertainty in Hawai'i as to whether a provider whose claim was wrongfully denied prior to the exhaustion of benefits is entitled to recover was noted in a federal district court as late as 2010, approximately four years after Jou filed his first appeal to the ICA in this case. In *Painsolvers, Inc. v. State Farm Mutual Automobile Insurance Co.*, the plaintiff sought a preliminary injunction, arguing that the insurer would contend that even if it was found to be liable for several claims, the insurer "could then claim benefits had been exhausted and thus not pay the claims." 685 F.Supp.2d 1123, 1139 (D.Haw.2010). In a lengthy footnote, the district court responded that "[t]wo unpublished dispositions [the plaintiff did] not cite might support [the plaintiff's] position, but neither is dispositive." *Id.* at 1139 n. 17 (emphasis added). The district court then cited the ICA's SDO from the first appeal in this case and described the SDO as follows:

> [T]his is an unpublished and nonbinding decision of the Intermediate Court of Appeals of Hawai'i, which the court there specifically limited to the facts of that case. Furthermore, the factual background can be distinguished as it references "any additional outstanding bills" and it is unclear whether the plaintiff's claims there were made prior to the exhaustion of the limit.

*Id.* (emphases added).[9] The district court thus suggested that whether a plaintiff can recover from an insurer after a policy has been exhausted might depend on whether a plaintiff's claim was made before or after the policy limits were reached. *See id.* As noted, the only Hawai'i cases addressing the issue have been unpublished and are therefore not dispositive.

Not only was there uncertainty in Hawai'i as to whether Jou could recover, but as Jou noted, liability in excess of policy limits had been imposed on an insurer in a case where the insurer engaged in wrongful conduct toward the claimant. *See Delmonte v. State Farm Fire & Cas. Co.*, 90 Hawai'i 39, 52 n. 9, 975 P.2d 1159, 1172 n. 9 (1999) ("Even if the ultimate judgment was in excess of the policy limits, the insurer may still be liable for the entire amount if its refusal to settle was unreasonable."); *see also Coleman v. Holecek*, 542 F.2d 532, 538 n. 7 (10th Cir.1976) ("[L]iability for a judgment in excess of the policy limits will be imposed where there was something the insurance company could have and should have done that would have relieved the insured of his excess liability[.]") (internal quotation marks and citation omitted); *S. Gen. Ins. Co. v. Wellstar Health Sys., Inc.*, 315 Ga.App. 26, 726 S.E.2d 488 (2012) (holding that an insurer was liable to a health care provider for the amount of the provider's hospital liens even though the insurer had already paid its policy limits directly to the insured, because the insurer could have satisfied the insured's claim by verifying the liens, making payment directly to the health care provider, and then remitting any balance of the policy limits to the insured).

In addition, as Jou noted, there are good policy reasons for adopting the view that a person in Jou's position could recover. Because Jou filed his claim before the policy was exhausted, his claim would be superior to that of other providers who might have been paid by DTRIC after Jou filed his claim. As between the insurer and the medical provider, it would seem that the insurer

---

9. The district court also cited *AIG Hawai'i Insurance Co. v. Pain Management Clinic of Hawai'i, Inc.*, No. 26743, 109 Hawai'i 468, 128 P.3d 350, 2006 WL 380183 (Jan. 9, 2006) (mem.op.). In that unpublished disposition, this court determined that an insurer did not have to pay certain benefits because policy limits had been reached. *Painsolvers*, 685 F.Supp.2d at 1139 n. 17. The district court explained that *AIG Hawai'i* was distinguishable because exhaustion of benefits was the insurer's defense in the first instance and not, as the plaintiff had suggested would occur, a defense asserted after the insurer was found to be liable. *Id.*

should bear the loss if its wrongful conduct resulted in the provider not obtaining payment for services rendered.

Further, Jou could have reasonably believed, and in fact argued, that the courts of this state would not adopt a rule that left providers who would have been compensated if not for an insurer's wrongful conduct without a remedy because such a rule would create stronger incentives for insurance companies to withhold, reduce, or deny payments to the providers.

If an insurer has no obligation to pay a provider once the policy limits are exhausted, the insurer can defeat a lawsuit alleging wrongful conduct as soon as the policy limits are reached. This may also cause doctors to hesitate in providing services to insureds because the doctor would incur the risk of not being paid by an insurance company even if benefits were still available at the time the doctor treated the insured and presented his or her bills to the insurer for payment.

■ Thus, when Jou first appealed, it was uncertain whether he could recover on his claim under the circumstances, and, more importantly, there was favorable authority and policy supporting his position. As such, it would seem that Jou's pursuit of his appeal was not irrational or without reason.

**B. Jou's request for fees and costs is further supported by the success of his prior claim that insurers are required to provide formal written notice of a denial or reduction of benefits to a medical provider**

In addition, it would seem that Jou's pursuit and eventual vindication of his claim that DTRIC failed to provide proper notice of the denial should have factored into the circuit court's consideration of whether Jou's appeal was reasonable. Jou argued to the circuit court on remand that he had prevailed on the

question of whether insurers had to provide formal notice to medical providers upon reducing or denying a provider's claim.

Jou explained that the ruling was important because if the insurer does not send out formal notice, then the "provider's remedies are not triggered under companion statutes in the then no-fault system" and this could leave a provider without "a triggering point to take their remedies forward."

Jou further explained that "after years and years of litigation[,] the [Hawai'i] Supreme Court agreed with [Jou] on that point." Indeed, as noted, the ICA agreed with Jou in concluding that DTRIC was required to provide formal notice upon reduction or denial of benefits. It would seem eminently reasonable for Jou to pursue a claim that was later adjudicated in his favor, the result of which was to reaffirm an insurer's obligation to give notice when it reduces or denies a provider's claim. However, at the hearing on Jou's motion for costs and fees on remand, the circuit court did not address the denial of notice issue and only referred to the lack of an obligation on DTRIC's part to pay once the policy benefits were exhausted.[10]

In this regard, the ICA concluded that DTRIC's failure to give statutorily required notice merely exposed it to potential civil penalties and did not provide a remedy to Jou on appeal. *Jou,* 2012 WL 1088713, at *3. However, obtaining a remedy on appeal is not required in order to obtain attorney's fees under HRS § 431:10C–211(a). As stated in *Kawaihae,* even if a "claim is denied in its entirety," 1 Haw.App. at 362, 619 P.2d at 1092, a plaintiff may nevertheless recover reasonable attorney's fees and costs under that statute upon a determination by the trial court that the claim was not unreasonable, fraudulent, excessive, or frivolous. Moreover, because Jou's claim was not denied in

---

**10.** Moreover, the circuit court's May 19, 2009 written order stated:

Pursuant to the remand of the ICA, this [c]ourt does not find that JOU's claim was fraudulent, excessive or frivolous. However, this [c]ourt is mindful of the body of case law holding that an insurance company has no obligation to pay on a claim for No-fault/PIP benefits beyond the No-fault/PIP policy limit. This [c]ourt further

finds that the finding by the Hearings Officer that the policy benefits were exhausted as of February 3, 1999 was clear and was never challenged by JOU. Accordingly, this [c]ourt finds JOU's arguments and his claims that reimbursement should have been paid under the provisions of the No-fault/PIP insurance policy of DTRIC were unreasonable.

its entirety, an award of attorney's fees would seem even more appropriate.

Based on all of the foregoing reasons, we therefore conclude that Jou's request for attorney's fees and costs was not unreasonable under HRS § 431:10C–211(a) because his underlying claim for personal injury protection benefits based on medical services rendered to the insured had been made before the insured's policy limit was reached.

## IV. CONCLUSION

Accordingly, we vacate the ICA's May 14, 2012 Judgment on Appeal and the circuit court's May 19, 2009 Final Judgment on Remand, and we remand this case to the circuit court for further proceedings consistent with this opinion.

